821 So.2d 3 (2002)
CITY OF EUNICE
v.
Earlyn CARRIER.
No. 01-1184.
Court of Appeal of Louisiana, Third Circuit.
February 20, 2002.
Opinion Granting Rehearing in Part May 1, 2002.
*5 Christopher Richard Philipp, Attorney at Law, Lafayette, LA, Counsel for Plaintiff/Appellee City of Eunice, Louisiana.
Michael W. Robinson, Pucheu, Pucheu & Robinson, Eunice, LA, Counsel for Defendant/Appellant Earlyn Carrier.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and MICHAEL G. SULLIVAN, Judges.
WOODARD, Judge.
In this workers' compensation case, the employee, Mr. Earlyn Carrier, appealed the WCJ's finding that he forfeited benefits, pursuant to La.R.S. 23:1208.1, for his failure to list a previous injury on his pre-employment medical history questionnaire. We reverse.

* * * * *
Mr. Carrier began working for the City of Eunice (the City) May 25, 1995. Prior to that, he worked for DeBarge's Grocery Store, for which he handled sacks of crawfish. While lifting one, he was injured and diagnosed as having thoracic outlet syndrome, which mimics neck injuries. Subsequently, he underwent thoracic outlet surgery and fully recovered. Thereafter, he applied to the City of Eunice for a truck-driving job.
*6 Before beginning that employment, he completed the City's medical history form in which he was asked to "list all injuries you have had (either on or off the job)." He answered "thoracic outlet." In March 1996, nearly one year after beginning his employment, he ruptured a disc in his neck while moving a large corrugated pipe. The City paid for cervical surgery and indemnity benefits until he returned to work, this time as a street sweeper. Although he performed his assigned duties, he suffered frequent pain and experienced difficulty doing his job because he had not fully recovered.
On November 17, 1997, while moving big chunks of concrete, he, substantially, aggravated his neck condition to the point that he became totally disabled again. He experienced severe depression, had suicidal ideations, and was admitted to Lake Charles Memorial Hospital for inpatient treatment.
On or about February 28, 1998, the City began frequent surveillance of him. The surveillance provided video coverage of him walking, opening the hood of his truck, washing it with a hand wand, spray painting, sanding, bending, stooping, turning his neck, talking on a telephone that was held between his cheek and shoulder, and lifting several small items and placing them in the rear of his truck and driving.
Subsequently, the City sought to terminate benefits based upon its perception that he was able to return to work and earn 90% of his previous wages. It also suggested that there were grounds for dismissing his claim, altogether, pursuant to La.R.S. 23:1208.1. The City suggested that Section 1208.1 should be applied because Mr. Carrier did not specifically state in the pre-employment questionnaire that he had difficulty with his neck and that he later ruptured a disc in his neck while working for the City.
At the time of trial, the City was paying him SEBs at his full rate of $735.08 per month. Additionally, starting in May of 2001, he began receiving $705.00 per month in Social Security disability benefits. At trial, the WCJ, without assigning reasons, ruled in the City's favor. The WCJ ruled that La.R.S. 23:1208.1 completely barred his claim and that he was able to return to work, earning 90% of his previous wages. Mr. Carrier appeals.

REASONS FOR JUDGMENT
He argues that the WCJ erred in not issuing reasons for judgment. According to La.Code Civ.P. art. 1917, in a non-jury case, the court shall give its reasons for judgment when the request is made no later than ten days after it signs the judgment. Since, Mr. Carrier never requested reasons for judgment, the WCJ was not obligated to issue them.

STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a WCJ's finding of fact in the absence of manifest error or unless it is clearly wrong.[1] When determinations are based on the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.[2] Where there are two permissible views of the evidence, the factfinder's choice between them cannot be *7 manifestly erroneous or clearly wrong.[3] If the WCJ's findings are reasonable in light of the entire record, we may not reverse, even though convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently.[4]

FRAUD: La.R.S. 23:1208.1
In the case sub judice, it appears that the WCJ ruled that Mr. Carrier had forfeited his rights to benefits under La.R.S. 23:1208.1 because of his failure to state that he had experienced many previous difficulties with his neck.
There are three component parts to establishing a Section 1208.1 violation: (1) untruthfulness; (2) prejudice; and (3) notice.
Furthermore, the claimant must do more than simply provide untruthful answers before forfeiting benefits. The employer must also prove that the untruthful statements were prejudicial to it and that it provided the employee with statutory notice. La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury.[5] In Resweber v. Haroil Const. Co.,[6] the supreme court concluded that the legislature imposed forfeiture under La.R.S. 23:1208.1 strictly for when the employer suffers prejudice. An employer is prejudiced only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund."[7] An untruthful statement on the questionnaire regarding a preexisting condition, may be prejudicial to the employer's ability to recover from a second injury fund.[8]
The employer may obtain medical information from the employee about preexisting conditions. By reviewing the information provided on the medical history questionnaire, the employer may determine if he has hired a worker with a permanent partial disability for second injury fund purposes.[9] Permanent partial disability is statutorily defined as "any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become injured."[10]
Because statutory forfeiture is a harsh remedy, its application must be strictly construed. La.R.S. 23:1208.1 provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury *8 fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

(Emphasis added.)
Moreover, in Wise v. J.E. Merit Constr., Inc., the Louisiana Supreme Court stated:[11]
A work injury subsequent to a known permanent partial disability qualifies an employer to seek reimbursement for worker's compensation benefits from a statutorily designated "Second Injury Fund" under certain circumstances. A claimant's untruthful statement regarding his permanent partial disability which prejudices his employer's ability to seek reimbursement from the fund gives rise to an affirmative defense under La.R.S. 23:1208.1, whereby the injured employee forfeits all compensation benefits.
Thus, forfeiture should occur under narrow circumstances. "There must be an untruthful statement; prejudice to the employer; and compliance with the notice requirements of the statute. An employer has the burden of proving each element within the statute. The lack of any one of the elements is fatal to an employer's avoidance of liability."[12]
Regarding truthfulness, in the instant case, the medical history questionnaire listed thirty conditions, which La. R.S. 23:1378(7) presumes to be disabling. It requested that Mr. Carrier "list all injuries you have had (either on or off the job)." He was to place an "X" in the space next to any of them that he might have suffered. He answered that he had previously suffered from thoracic outlet syndrome and responded affirmatively to whether he had lost work due to an injury. These answers were true. Moreover, because the questions did not ask him deny having any of the medical conditions, under Wise, the Louisiana Supreme Court found that an employer could not meet its burden of showing that the employee made a false statement. It elaborated that "a survey of cases indicates that an employee/applicant had failed to answer truthfully only when he clearly indicated `no' on the employer's questionnaire, denying the existence of a known medical condition."[13]
Furthermore, when he indicated that he suffered from thoracic outlet syndrome, the City could have questioned him regarding the injury to gain further information and resolve any misunderstanding.
The decision in this case turns on whether Mr. Carrier's failure to list a previous cervical disc injury was intentional untruthfulness. When questioned about his previous injuries, he truthfully disclosed the diagnosis, thoracic outlet syndrome, that his most recent physician had told him. Had he been asked to list the diagnosis of every doctor he had seen, perhaps, he would have listed multiple neck injuries such as a ruptured cervical disc. However, Drs. Moore and Kober changed his diagnosis in 1994. Furthermore, he was not asked to discuss the symptoms that he experienced, which included neck pain. In addition, he responded affirmatively to whether he had lost work due to an injury. There is nothing in the record to suggest *9 that he was trying to be deceitful, anything but that. If his intentions were to conceal the truth, it is logical to presume that he would not have listed any previous condition, since he had no way to predict an injury and of what kind. He simply responded according to what he understood the question to be. Accordingly, we find that Mr. Carrier did not intend to be untruthful.
In order to fulfill the prejudice requirement, the City had to establish proof that he did not disclose a condition that made it, either, inevitable or very likely that he would rupture a cervical disc.[14] Neither the doctors' depositions nor the medical records establish the proof necessary to support the employer's claim. Moreover, there are no statements found in the record that Mr. Carrier's prior neck injury (later diagnosed as thoracic outlet syndrome) made it inevitable, or at the very least, more likely, that he would rupture a disc in his neck almost one year after going to work for the City.[15] Therefore, the City has failed to meet its burden of proof on this element, as well.
The City, also, alleged that Mr. Carrier's failure to disclose his prior injury prejudiced it by depriving it of the opportunity to receive Second Injury Fund reimbursement. The employer bore the burden of convincing the court of this.
The third statutory requirement of La.R.S. 23:1208.1 provides that the employer must advise the employee of the consequences to answer truthfully in "bold faced block lettering of no less than ten point type." The medical history questionnaire does not meet the requirement because, rather than conforming to the bold face block lettering requirement, the notification was in 10-point type and was only underlined.
The City is required to prove all three elements, which La.R.S. 23:1208.1 requires, but has failed to prove even one. Thus, forfeiture is inappropriate.
Accordingly, we reverse.

CONCLUSION
For the foregoing reasons, forfeiture under La.R.S. 23:1208.1 is not warranted. We reverse the WCJ's judgment and remand to the Office of Workers' Compensation for further proceedings, consistent with this opinion.
REVERSED.
REHEARING GRANTED IN PART
WOODARD, Judge.
This rehearing is granted for the limited purpose of clarifying this court's previous judgment.
The WCJ's finding that Mr. Carrier was capable of returning to work and earning at least 90% of his average weekly wage was based upon the WCJ's perception that Mr. Carrier had been fraudulent about the claim.
This court reversed the finding of fraud and remanded the case to the WCJ for further proceedings regarding the remaining issue. The remaining issue is whether or not Mr. Carrier is entitled to SEBs.
NOTES
[1] Arceneaux, 365 So.2d 1330.
[2] Canter v. Koehring, 283 So.2d 716 (La. 1973), quoting Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
[3] Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
[4] Lyons v. Bechtel Corp. & AIU N. American, Inc., 00-364 (La.App. 3 Cir. 12/27/00); 788 So.2d 34.
[5] Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7.
[6] Id.
[7] La.R.S. 23:1208.1.
[8] Resweber, 660 So.2d 7.
[9] Wise v. J.E. Merit Constrs., Inc., 97-684 (La.1/21/1998); 707 So.2d 1214.
[10] La.R.S. 23:1378(F).
[11] 707 So.2d at 1217.
[12] Id. at 1218.
[13] Id. at 1219.
[14] Id.
[15] Williams v. Holly Hill Nursing Home, 93-557 (La.App. 3 Cir. 3/30/94); 640 So.2d 383, writ denied, 94-1134 (La.7/1/94), 641 So.2d 208.