800 So.2d 898 (2001)
BOH BROS. CONSTRUCTION CO.
v.
Curtis P. PRICE.
No. 2000-CA-2233.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 2001.
Writ Denied December 14, 2001.
*899 William R. Mustian, III, Stanga & Mustian, P.L.C., Metairie, LA, Counsel for Defendant/Appellant.
Richard S. Vale, Pamela F. Noya, Blue Williams, L.L.P., Metairie, LA, Counsel for Plaintiff/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, and Judge MAX N. TOBIAS, JR.
TOBIAS, Judge.
On 14 July 1999, defendant, Curtis P. Price ("Price"), a laborer employed by Boh Brothers Construction Company, L.L.C. ("Boh Brothers"), slipped and fell while shoveling asphalt at a job site. At the time, he complained of ankle, neck, and *900 back pains and was taken to the emergency room at Memorial Medical Center. X-rays taken at the hospital disclosed that Price had undergone prior neck surgery, and the emergency room physician recommended that he see his treating physician, Stephen J. Flood, M.D., an orthopedist.
Two days later, on 16 July 1999, Price went to see Dr. Flood, complaining of severe neck, mid-back, and low back pains, as well as headaches and dizziness. Following an examination, Dr. Flood completed a medical report, which stated, in part:
Past History: Is significant in that he is an old patient of mine. I saw him from January 30, 1995 through March 25, 1998. Workup during that time ultimately showed a symptomatic C4-5 disc for which he underwent anterior cervical fusion. He had minor abnormalities at T5-6 and T8-9 and a herniated disc at C7-8. He also had a normal lumbar MRI but did have SI joint dysfunction which required a couple of injections. Prior to that he had had one other minor low back incident which occurred while working for Winn Dixie in February 1991.
The last time I saw him he was well on his way to recovery and did have some residual neck and low back pain, but noted on numerous occasions, that he was markedly improved by his neck surgery.
After receiving Dr. Flood's report and Price's claim for workers' compensation, Boh Brothers filed a disputed claim for compensation on 3 August 1999, claiming Price failed to disclose pre-existing neck and back injuries when he applied for employment in July 1998. Following a trial, the workers' compensation judge determined the following: (1) Price was injured on 14 July 1999 while in the course and scope of his employment; (2) on the date of the accident, Price was a full-time employee earning a weekly wage of $400.00; (3) Boh Brothers failed to prove that Price violated La. R.S. 23:1208.1; (4) the medical evidence did not support Price's allegations that the extent of his disability and/or work restrictions had worsened as a result of the accident; (5) Price was not entitled to temporary total disability or supplemental earnings benefits; and, (6) Price was entitled to medical treatment related to the aggravation of his pre-existing condition.
Price appeals the portion of the Office of Workers' Compensation judgment denying him temporary total disability and supplemental earnings benefits. Boh Brothers also appeals, arguing that the workers' compensation judge erred in determining that it failed to prove that Price violated La. R.S. 23:1208.1 and that his average weekly wage was $400.00.
La. R.S. 23:1208.1, relevant to an employer's inquiry into an employee's previous injury claims and an employee's forfeiture of benefits, provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical condition are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold *901 faced [sic] block lettering of no less than ten point type.
The purpose of La. R.S. 23:1208.1 is to allow the employer to ask prospective or current employees about prior injuries. It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim. The answers provided on the questionnaire allow the employer to discern if he has hired or will hire a worker with a permanent partial disability for second injury fund purposes. Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7.
La. R.S. 23:1208.1 provides for forfeiture under narrow circumstances: there must be an untruthful statement; compliance with the notice requirements of the statute; and prejudice to the employer. Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214, 1218. An employer has the burden of proving each element within the statute. The lack of any one of the elements is fatal to an employer's avoidance of liability. Id.
A survey of cases indicates that an employee/applicant has failed to answer truthfully only when he clearly indicates "no" on the employer's questionnaire, denying the existence of a known medical condition. See, e.g., Carter v. Our Lady of the Lake Regional Medical Center, 612 So.2d 805 (La.App. 1 Cir.1992); Williams v. Fibrebond Corp., 27,401, 27,402 (La.App. 2 Cir. 9/27/95), 661 So.2d 562; Burris v. LaSalle Parish Police Jury, 95-696 (La. App. 3 Cir. 11/2/95), 664 So.2d 680; Stevens v. Bechtel Construction Corp., 94-1825 (La.App. 4 Cir. 4/26/95), 655 So.2d 423; and Rivera v. West Jefferson Medical Center, 96-152, 96-153 (La.App. 5 Cir. 7/30/96), 678 So.2d 602.
At trial, Price testified that on 28 July 1997, with the assistance of his father, a long-time Boh Brothers' employee, he submitted an application for employment at Boh Brothers. The application process required him to undergo a drug test and complete several forms.[1] After passing the drug test, Price returned to Boh Brothers early the next morning to complete the forms. According to Price, Lawrence DeFraites, a Boh Brothers supervisor, presented the forms to him, telling him to "sign by the X." Price testified that he signed by each "X" but never read the forms. Upon further questioning, however, he acknowledged that he read and completed the personnel record form and provided his name, social security number, and street address on the W-4 form. Price admitted that he had sustained a work-related injury in 1995 for which he underwent neck surgery in January 1996 and that he had settled a personal injury claim arising from the injury for $270,000.00.
The Boh Brothers medical questionnaire at issue stated, "Have you received medical treatment for any of the following injuries and/or diseases: ...." Following that statement was a single-spaced list of various medical conditions, diseases, and situations to which the respondent was to mark "yes" or "no." Below the questions, the questionnaire contained the following boldfaced, typed notice: "I AM AWARE *902 THAT FALSIFICATION OF ANY ANSWER WILL BE GROUNDS FOR MY IMMEDIATE DISMISSAL AND MAY RESULT IN DENIAL OF WORKERS' COMPENSATION BENEFITS."
Price's questionnaire contained a "no" response to the listings "Back or neck injuries or problems?", "Knee, elbow, shoulder or other joint injuries?", "Are you presently taking medication for any condition?", and "Do you have any other health problems not covered above?" Price explained that he neither read the form nor answered any of the questions prior to signing by the "X." When asked whether the questionnaire was completed and contained "no" answers at the time he signed it, Price responded, "yes." Upon further questioning, he vacillated, testifying that "it probably was" and later, "I don't know for sure." Price asserted that he did not see DeFraites complete or sign the form. He also testified that DeFraites neither explained the form to him nor asked him any of the questions. Price acknowledged at trial that he could read and proceeded to read the bold faced notice when asked to do so. He also testified that had De-Fraites asked him whether he had had a prior neck or back injury, he would have responded "yes."
DeFraites, the field auditor for Boh Brothers' Asphalt Department, testified at trial that he assisted newly hired employees in completing employment-related paperwork. Although he could not specifically recall assisting Price, he recognized him as a former Boh Brothers' employee and identified the documents that Price had executed upon his hiring. According to DeFraites, he assisted 75 to 100 newly hired employees every year, and each was processed the same way. Regarding the medical questionnaire, DeFraites testified that he presented and read the medical questionnaire to the newly hired employee, specifically asking every question to the employee. Based on the employee's response to each question, DeFraites marked "yes" or "no." He then presented the completed questionnaire to the employee for review and signing. After the employee signed the questionnaire, De-Fraites also signed it.
It is well settled that a person who signs a written instrument is presumed to know its contents and cannot claim that he or she did not read or understand the document. Myers v. Burger King Corp., 618 So.2d 1123 (La.App. 4 Cir.1993). "`[I]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done.'" Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983), citing Snell v. Union Sawmill Company, 159 La. 604, 608, 105 So. 728, 730 (1925).
The record before us contains no oral or written reasons for judgment by the workers' compensation judge; thus, we are unable to ascertain the basis for the judge's finding that "Boh Brothers failed to carry its' [sic] burden of proof that claimant Curtis Price violated La. R.S. 23:1208.1." If we accept as true Price's testimony that he signed the medical questionnaire by the "X" without first reading the form and/or DeFraites explaining the form to him, the false statements made therein can only be attributed to Price. Absent testimony from Price that he was coerced into signing the medical questionnaire or that he signed it under duress, he is presumed to have had knowledge of the negative responses to the questions contained therein. Thus, the false statements on the questionnaire regarding a preexisting medical condition must be attributed to Price.
*903 Because untruthful answers alone do not result in the forfeiture of benefits, the next step is to determine whether the Boh Brothers' medical questionnaire complied with the notice requirements of the statute advising the employee that his or her failure to answer truthfully may result in forfeiture of workers' compensation benefits. The notice is to be displayed in boldfaced block lettering of no less than ten point type. La. R.S. 23:1208.1.
Price argued that Boh Brothers' medical questionnaire did not comply with the statutory notice requirement because it provided that the failure to answer truthfully could result in the "denial" rather than the "forfeiture" of workers' compensation benefits.
The Third Circuit Court of Appeal, in Louisiana Workers' Comp. v. Grayson, 99-230 (La.App. 3 Cir. 10/13/99), 746 So.2d 121, addressed the issue of whether the use of the word "denial" instead of the word "forfeiture" in the Second Injury Fund Questionnaire was a fatal flaw to the notice requirement under La. R.S. 23:1208.1.[2] In Grayson, the claimant filed a workers' compensation claim after injuring his back in a work-related accident in September 1997. Mr. Grayson had previously strained his back in February 1996 while employed with Community Care Center, but never missed work or filed a workers' compensation claim. However, he was treated by Dr. Steiner, who placed him on light duty status for a very brief period of time. Dr. Steiner also treated Mr. Grayson for the 1997 back injury and noted in his October 1997 medical report that Mr. Grayson's pain had gotten steadily worse since his visit in February 1996.
When Mr. Grayson obtained employment with the second employer, Vernon Moving and Storage, he answered and signed a second injury fund questionnaire, indicating that he had never had an injury or strain to his knee, back, or neck. At the bottom of the questionnaire, above the signature line, in large, bold-faced, typed letters, the form contained a certification and notice that stated: "I certify that the above answers are true, and understand that any false or misleading statements may be reason for denial of workers' compensation benefits and/or termination of employment." At trial, Mr. Grayson subsequently asserted that he answered as he did because he had not lost work hours or filed a claim for benefits for the first back injury and did not consider it serious. Based on his admission, the workers' compensation judge found that Mr. Grayson had provided false information on the questionnaire, but that forfeiture was not warranted because the notice provision failed to comply with La. 23:1208.1 because it contained the word "denial" rather than "forfeiture."
In affirming the workers' compensation judge, the appellate court cited his reasons, noting that Webster's New College Dictionary (1995 edition) defined "denial" as "a refusal to comply with or satisfy a request" as distinguished from "forfeiture," which is defined as "a surrender of something as punishment for a crime, offense, error, or breach of contract." The Court reinforced the distinction, citing Black's Law Dictionary 650 (6th ed. 1990), which defines "forfeiture" as a "deprivation or destruction of a right," and the "[l]oss of some right or property as a penalty for some illegal act" as well as a *904 "[l]oss of property or money because of a breach of a legal obligation." The Court concluded that the word "forfeiture" has a strong legal significance and connotes a destruction or a right and a "taking away" of property in connection with an illegal act that is not indicated by the word "denial." The Court further reasoned that its interpretation of the notice requirement set forth in La. 23:2801.1 comported with the Louisiana Supreme Court's enunciation in Wise, supra, that because forfeiture is a strict remedy, statutory forfeiture must be strictly construed.
It is well settled that statutes are to be interpreted in ways effectuating their intended purpose. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. While we recognize the distinct definitions of the words "denial" and "forfeiture" as set forth in Webster's New College Dictionary (1995 edition) and Black's Law Dictionary 650 (6th ed. 1990) and their significance, we decline to adopt the Third Circuit's interpretation of La. R.S. 23:1208.1 in Grayson, supra, because nothing indicates the Court considered the intended purpose of the statute in formulating its opinion.
In Resweber v. Haroil Const. Co., supra, the Louisiana Supreme Court reviewed the legislative history and intent of La. R.S. 23:1208 and 1208.1, the anti-fraud provisions of the Louisiana Workers' Compensation Act. Regarding La. 23:1208.1, the Court stated:
[W]hen originally enacted, Section 1208.1 contained no forfeiture provision at all, but merely stated: "Nothing in this Title shall prevent an employer from inquiring about previous workers' compensation claims paid to the employee while said individual was employed by a previous employer, and the employee shall answer truthfully." It appears the legislature, in initially enacting Section 1208.1, was simply making clear that an employer may inquire about previous claims. (Footnote omitted.)
* * * * *
The 1989 amendment to Section 1208.1 included a forfeiture of benefits provision and specifically included a notice requirement. The inclusion of a notice requirement in Section 1208.1, but not in Section 1208, indicates the legislature felt that fairness and equity required the employee be put on notice of the consequences of his false statement, i.e. forfeiture of benefits, in a situation in which Section 1208.1 applies, but not when 1208 applies.
* * * * *
It seems more plausible that the legislature intended that where one is given a questionnaire, concerning prior medical history, by his employer or prospective employer, not in the context of any pending workers' compensation claim, the employee may be in a position of trying to obtain or maintain employment and would not readily appreciate that giving a false statement at that point in time will have consequences on a subsequent workers' compensation claim, and therefore notice is required. (Citations omitted.) In other words, the critical consideration of the legislature in requiring notice in Section 1208.1 and not 1208, was not the type of false statement made, but rather the timing of the statement and the context in which it is made. If the false statement is directly made in relation to a claim for the purpose of fraudulently obtaining benefits, no notice should be required, and Section 1208 accordingly requires no notice. However, where the false statement is made at a time prior to any workers' compensation claim, and arises in a context *905 completely unrelated to workers' compensation, an employee may not be aware of the full ramifications of giving a false statement and, accordingly, the legislature, in Section 1208.1 imposed a notice requirement in such a situation.
Clearly, in enacting the notice provision of La. R.S. 23:1208.1, the legislature intended that the employer advise an employee/applicant that severe consequences exist for his failure to answer truthfully questions relating to a previous injury or medical condition on a medical questionnaire.
In the instant case, unlike in Grayson, supra, the workers' compensation judge made no distinction between the words "denial" and "forfeiture" in determining that Boh Brothers had not proved that Price violated La. R.S. 23:1208.1. Boh Brothers' notice is in bold-faced, block lettering of no less than ten point type. Although it contains the word "denial" rather than "forfeiture," we find that the notice does effectuate the legislative intent of the statute. It informs an employee/applicant who falsifies or misrepresents an answer on a medical questionnaire regarding a preexisting medical condition that his claim for workers' compensation benefits may be jeopardized. Thus, we find the notice provision in this case to be sufficient.
Moreover, La. R.S. 23:1208.1 contemplates that the employee's false statement be both material and directly related to the medical condition that is the subject of the disputed workers' compensation claim to result in the forfeiture of his benefits. In Grayson, supra, the Court accepted the claimant's statement that he failed to disclose his previous injury because he neither missed work nor filed a workers' compensation claim and did not consider it serious, which apparently contributed to its conclusion that forfeiture would have been a harsh penalty under the circumstances. In essence, the Court found the omission to be immaterial. Here, however, Price failed to disclose an earlier neck injury and surgery that resulted in a temporary partial disability, a worker's compensation claim, unemployment for two and one-half years, and a successful tort claim. Notably, too, Price testified that he had been released to work when he sought employment at Boh Brothers, contrary to Dr. Flood's testimony. Under these circumstances, we find Price's failure to answer truthfully material and significant; forfeiture is an appropriate penalty.
Next, we address whether Price's untruthful statements regarding his previous injuries were prejudicial to the employer. As noted in Wise, supra, an employer is prejudiced by one of two circumstances. The employee's untruthful answer must directly relate to the medical condition that is the subject of the claim or affect the employer's ability to receive reimbursement from the second injury fund.
A direct relationship is established pursuant to La. R.S. 23:1208.1 when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition. Wise, supra, at 1220. In the present case, Boh Brothers demonstrated that a direct relationship existed between Price's untruthful answers and the medical condition for which his claim was made. In addition to Price's medical records, Dr. Flood's deposition testimony was introduced at trial. Dr. Flood testified that he first treated Price in late January 1995 for complaints of neck, low back, and right knee pains, as well as numbness in both thighs, as the result of an earlier work-related injury. In January 1996, Dr. Flood performed a C4 5 anterior cervical discectomy and anterior cervical fusion on Price. As a result of the surgery, Dr. Flood rated Price as *906 having a ten percent permanent partial disability, restricted his lifting to forty pounds or less, and would not release him to do heavy manual labor. Dr. Flood continued to treat Price, and as of 25 March 1998, the last visit prior to his hiring at Boh Brothers, he noted:
Mr. Price returns. As has been noted in the past he's a very admirable person. He has been consistently doing everything asked of him. He is actually trying to find some type of sedentary type work, but has been totally unable to do so. He does continue to have neck pain. He was markedly improved by his surgery. He continues to have low back pain and has always had SI joint dysfunction. In fact, he asked for and received an SI joint block today helping him some.
I did get lateral flexion and extension views of the cervical spine today. It does show good solid fusion at C4-5. He is developing some increased disc spaces at C5-6. At this point, it is not so severe at this time that anything needs to be done.
AP and lateral views of the lumbar spine was compared to old x-rays, and there are no acute changes here. He does have some disc space narrowing present at L5-S1 and mild diffuse lumbar facet changes.
ASSESSMENT: Everything is pretty much at status quo. He requires small doses of medications and will into the unforeseen future. I will see him back for a clinical check in 12 weeks. If he has problems, I will see him sooner.
DIAGNOSIS: CERVICAL DISC DISPLACEMENT
LUMBAGO
SI JT DYSFUNCTION
DISABILITY STATUS: TOTAL, TEMPORARY
Dr. Flood testified that Price's accident with Boh Brothers aggravated his preexisting neck condition and, as a result, he remains disabled. In his 16 July 1999 report to Boh Brothers following his examination of Price, Dr. Flood stated, "I am concerned, however, that [Price] will probably never return to heavy manual labor, if for no other reason, because of his prior cervical spine problem, which has again been aggravated."
In addition to Price's medical records and Dr. Flood's deposition, Boh Brothers offered the testimony of Michael Nebe, a licensed vocational rehabilitation counselor. Nebe testified that Dr. Flood's imposing a forty pound lifting restriction excluded Price from engaging in work classified greater than "medium-duty." According to Nebe, a laborer's position at Boh Brothers was classified as "heavy" to "very heavy" manual labor, and Price's job exceeded the restrictions imposed on him as a result of his previous cervical injury and surgery.
Based on the evidence in the record, we find that the pre-job condition of Price's cervical spine made the injury for which the present claim was filed inevitable or very likely to occur. Price's duties as a laborer at Boh Brothers required heavy lifting, bending, reaching, and turning, which made him susceptible to injury because of the presence of his pre-existing condition. The physical demands of the job required Price to use his previously injured neck and back. Therefore, a recurrence of that condition or some other injury was likely to happen while Price performed his regular duties for Boh Brothers.
Because we find that Boh Brothers demonstrated that Price's untruthful answers on the medical questionnaire directly related to the medical condition that is the subject of the instant claim, thereby, *907 satisfying the "prejudice to the employer" element under La. R.S. 23:2801.1, we need not address whether the untruthful answer affected Boh Brothers' ability to recover from the second injury fund. Likewise, we pretermit the average weekly issue because we find the workers' compensation judge's determination that Boh Brothers failed to prove that Price had violated La. R.S. 23:2801.1 is erroneous and clearly wrong. The forfeiture of benefits is warranted in this case.
Accordingly, for the foregoing reasons, the judgment of the Office of Workers' Compensation is reversed insofar as it determined that (a) Boh Brothers failed to carry its burden of proof relevant to La. R.S. 23:2801.1 and (b) Price is entitled to medical treatment related to the aggravation of his pre-existing injury. In all other respects the judgment is affirmed.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] The forms included: A notice to Applicant/Employees regarding consumer reports; Employee's Withholding Allowance Certificate (W-4); Boh Brothers Personnel Record; U.S. Department of Justice Immigration and Naturalization Service Employment Eligibility Verification; Construction and General Laborers' Local Union Authorization and Initiation Fee Assignment; Boh Brothers Medical Questionnaire; Acknowledgement of Receipt of Bob Brothers Safety Handbook; and, the Drug Screen Consent Form.
[2] Counsel for both parties failed to disclose to this Court the Grayson case in brief. From the careful phraseology of Boh Brothers' brief, it is apparent that its counsel was aware of the decision. We pretermit a discussion of how this omission violates Rule 3.3(a)(3) of the Rules of Professional Conduct.