836 So.2d 340 (2002)
Donald DULIN
v.
LEVIS MITSUBISHI, INC.
No. 2001 CA 2457.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Writ Denied March 28, 2003.
*342 Charles R. Davoli, Davoli, Sorrells & Bianca, Baton Rouge, for Plaintiff-Appellant Donald Dulin.
Stephen E. Broyles, Glusman, Broyles & Glusman, L.L.C., Baton Rouge, for Defendant-Appellee Levis Mitsubishi, Inc.
Before: PARRO, JAMES, and PATTERSON, JJ.[1]
PARRO, J.
This is an appeal by an employee from a judgment of the Office of Workers' Compensation Administration,[2] which dismissed the employee's disputed claim for compensation because of a violation of LSA-R.S. 23:1208.1. For the following reasons, this court affirms.

Facts and Procedural History
Donald Dulin (Dulin) was employed with Levis Mitsubishi, Inc. (Levis) as a body technician from April 1996 to April 1997. On a "Pre-employment Questionnaire" completed on April 16, 1996, Dulin responded in the negative to an inquiry concerning physical impairments that would interfere with his ability to perform the job of a body technician. Nonetheless, in April 1995, prior to his employment with Levis, Dulin had had back surgery (hemilaminectomy and discectomy) in Memphis, Tennessee, for a left sided L4-5 spinal disc problem. During the year of his employment with Levis, Dulin had informed most of his coworkers in the body shop about his prior back problems and back surgery. Dulin left Levis' employment in April 1997 for a better paying job.
In August 1998, Dulin returned to work with Levis as a body shop repairman. In conjunction with his reemployment, Dulin completed a "Post-Hire Medical History" questionnaire on August 21, 1998. To every inquiry on the questionnaire, Dulin responded negatively. Notably, Dulin responded "no" to the following questions:
Has any doctor ever restricted your activities?
Have you ever been assessed any percentage of permanent disability to any part of your body for any reason whatsoever?
Have you ever had surgery to any part of your body?
Have you ever received treatment for your back ... from a doctor, chiropractor, therapist or other health care provider?
Have you ever had an injury which required you to miss time from work?
Are you aware of any condition or injury that might impair or limit your ability to work for this company?
Each separate page of the form completed by Dulin contained a notice in bold-faced lettering stating:[3]
PURSUANT TO LSA-RS 23:1208 AND 1208.1 OF THE LOUISIANA WORKERS' COMPENSATION ACT, I UNDERSTAND *343 THAT THE FAILURE TO ANSWER TRUTHFULLY ANY OF THE ABOVE QUESTIONS MAY RESULT IN (1) A FINE OF NOT MORE THAN FIVE HUNDRED DOLLARS OR IMPRISONMENT FOR NOT MORE [THAN] TWELVE MONTHS, OR BOTH AND (2) A FORFEITURE OF COMPENSATION AND MEDICAL BENEFITS UNDER THE LOUISIANA WORKERS' COMPENSATION ACT.
Furthermore, he denied experiencing a discectomy, shooting pains, ruptured discs, bulging discs, sore back, back pain, back ache, back stiffness, back injury, or back symptoms.
Two months later, on October 28, 1998, Dubin injured his back at the L4-5 level while in the course and scope of his employment with Levis. Dulin eventually had surgery performed on his back by Dr. Horace Mitchell, a neurosurgeon, on January 14, 1999, and April 3, 1999. Levis rejected Dulin's request for workers' compensation benefits, denying that an accident had occurred and arguing that LSA-R.S. 23:1208.1 precluded benefits on account of the untruthful statements made by Dulin on his "Post-Hire Medical History."
Following the trial of this matter, the workers' compensation judge (WCJ) determined that an accident had occurred in the course and scope of employment. In relation to Levis' claim of a forfeiture of workers' compensation benefits under the provisions of LSA-R.S. 23:1208.1, the WCJ made the following findings: Dulin had given untruthful answers on his post-hire medical history questionnaire; the post-hire medical history questionnaire complied with statutory requirements; there was a direct relation between the untruthful answers and the subsequent injury and medical condition; and Levis did not have the requisite actual knowledge of Dulin's permanent partial disability to qualify for the second injury fund, citing LSA-R.S. 23:1378(A). Based on his finding that the untruthful answers prejudiced Levis' ability to recover under the second injury fund, the WCJ found that LSA-R.S. 23:1208.1 had been violated, resulting in a forfeiture of workers' compensation benefits.
Dulin appealed, contending that the WCJ erred in finding that actual knowledge of a permanent partial disability by Levis is required for it to qualify for second injury fund reimbursement in light of the knowledge possessed by some of Levis' employees, including supervisors, and in finding that Dulin's answers were untruthful so as to constitute a violation of LSA-R.S. 23:1208.1 based on Levis' "knowledge" of the situation.[4]

Standard of Review
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding, and 2) whether the record further establishes that the finding is not *344 manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

Analysis
An employee's responsibility for responding to an employer's inquiry into his prior injury is governed by LSA-R.S. 23:1208.1, which provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
This statute provides for the forfeiture of workers' compensation benefits under narrow circumstances: there must be an untruthful statement by the employee, compliance by the employer with the notice requirements of the statute, and prejudice to the employer. An employer has the burden of proving each element within the statute. The lack of any one of the elements is fatal to an employer's avoidance of liability. Wise v. J.E. Merit Constructors, Inc., 97-0684 (La.1/21/98), 707 So.2d 1214, 1218. Levis' satisfaction of the second element of notice is not disputed in this case. Therefore, only the WCJ's findings relative to the making of untruthful statements and the prejudicial effect on Levis need be considered in this case.

Untruthful Statements
An employee has failed to answer truthfully only when he clearly indicates "no" on the employer's questionnaire, denying the existence of a known medical condition. Boh Bros. Construction Co. v. Price, 00-2233 (La.App. 4th Cir.8/29/01), 800 So.2d 898, 901, writ denied, 01-2623 (La.12/14/01), 804 So.2d 634.
The 1995 medical records of Baptist Memorial Hospital in Memphis, Tennessee, and Dr. Shelly D. Timmons reveal that Dulin suffered from a significant left L4-5 herniated nucleus pulposus extending from the midline into the left foramen, which caused him to experience back and left lower extremity pain. On April 6, 1995, a left L4-5 partial hernilaminectomy and discectomy were performed. According to Dulin, the surgery prevented him from working for a period of time. Two weeks after the surgery, Dr. Timmons told Dulin that he could return to work but should refrain from lifting over 30 pounds.
Dulin's wife testified that prior to his 1998 work accident, Dulin voiced complaints of pain in his back. She also explained that he had taken aspirin on a regular basis as a pain reliever since the 1995 surgery. According to Dulin, his back was doing fine until the accident, without limitation in his range of motion. Admittedly, Dulin occasionally complained of pain and soreness while working at Levis, which Dulin attributed to the nature of his work, noting that his coworkers voiced similar complaints.
The parties stipulated that Dulin had made an untruthful statement. Dulin contends that the making of such statement was mitigated by the revelations made by Dulin during the period of his prior employment. *345 Dulin testified that he told everyone in the body shop, including the shop's manager, about his prior back injury and surgery. According to Dulin, all of his coworkers were shown his surgical scar. However, the shop's manager denied knowledge of Dulin's pre-existing condition and 1995 back surgery.
According to Dulin, the manager of the body shop called him into his office and handed him the post-hire medical history questionnaire, but only after Dulin had left it on the manager's desk one week earlier for completion at a later time. Based on the manager's lack of knowledge regarding the form and his failure to offer to refer Dulin to a knowledgeable Levis employee for assistance in completing the form, Dulin contends he hurriedly placed all negative responses and returned to work. Then, he attempted to clarify his testimony by stating that he took it for granted that Levis was simply inquiring about the time period since his last employment with Levis, thus it was not really necessary for him to read through the listed items. However, he admitted that the form did not make such a time limitation, that he was unsure as to exactly what portions of the form he had actually read, that he had not read the warning, and that he had not been coerced by his supervisor in filling out the form. As further justification for answering untruthfully, Dulin referred to his inability to read very well on account of having only received a ninth grade education.[5]
A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending he did not read it or that it was not explained or that he did not understand it. Tweedel v. Brasseaux, 433 So.2d 133, 138 (La.1983); Griffin v. Lago Espanol, L.L.C., 00-2544 (La.App. 1st Cir.2/15/02), 808 So.2d 833, 840; Boh Bros. Construction Co. v. Price, 800 So.2d at 902. If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively while this is being done. Tweedel v. Brasseaux, 433 So.2d at 137.
If we accept as true Dulin's testimony that he responded negatively to all of the listed questions and signed the post-hire medical history questionnaire without first reading the form and/or having someone explain the form to him, the untruthful statements made therein can only be attributed to Dulin. Absent testimony from Dulin that he was coerced into signing the form or that he signed it under duress, he is presumed to have had knowledge of the import of the negative responses to the questions contained therein. Thus, the false statements on the questionnaire regarding a preexisting medical condition must be attributed to Dulin.

Prejudice to Levis
Untruthful answers alone do not result in the forfeiture of benefits. The employer must also prove that the untruthful statements were prejudicial to it. An employer is prejudiced by one of two circumstances: (1) the employee's untruthful answer must directly relate to the medical condition that is the subject of the claim or (2) the employee's untruthful answer must affect the employer's ability to receive reimbursement from the second injury fund.[6]Wise v. J.E. Merit Constructors, *346 Inc., 707 So.2d at 1217-1218; Resweber v. Haroil Construction Company, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, 16; Boh Bros. Construction Co. v. Price, 800 So.2d at 905. The employer's satisfaction of either prong of the "prejudice to the employer" test is sufficient to withstand its burden of proof as to this element. See Boh Bros. Construction Co. v. Price, 800 So.2d at 906-907.
Having found that a direct relationship to the medical condition existed, Levis urges that it is unnecessary for this court to reach the second prong of the "prejudice to the employer" test. We agree. Where the employer has shown that the employee's untruthful answers directly relate to the medical condition that is the subject of the claim, it is unnecessary for the court to resolve whether the untruthful answer affected Levis' ability to recover from the second injury fund. See Boh Bros. Construction Co. v. Price, 800 So.2d at 906-907. Thus, we must initially determine if the WCJ erred in finding that Levis had satisfied its burden of proof under the first prong of the "prejudice to the employer" test.
A direct relationship is established pursuant to LSA-R.S. 23:1208.1 when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition. Wise v. J.E. Merit Constructors, Inc., 707 So.2d at 1220. Dr. Mitchell, who performed the 1999 surgeries, testified that the surgery performed on Dulin in Tennessee in 1995 was the exact same operation that he performed on Dulin in 1999 as a result of a re-injury to the same side and same disc space. Dr. Mitchell explained that it is not uncommon for a patient who has had lumbar disc surgery to have a recurrent disc problem because of the presence of the preexisting condition, especially for someone in Dulin's line of work.
Based on the testimony of Dr. Mitchell, the WCJ found that Levis established that the injury was to the same part of the spine and that the two injuries merged to cause a more serious disability. Furthermore, the WCJ found reasonable support in the testimony of Dr. Mitchell that the subsequent injury was inevitable or at least very likely to occur because of the presence of the preexisting condition. Based on our review of the record, we are unable to find manifest error in the WCJ's finding that Levis proved a direct relation between Dulin's untruthful answers to Levis' post-hire medical history questionnaire and the 1998 injury and the medical condition that form the basis of this claim. Thus, the forfeiture of benefits is warranted in this case.[7]

Decree
For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. Costs of the appeal are assessed to Donald Dulin.
AFFIRMED.
NOTES
[1] Judge A. Clayton James, retired from the Twenty-Second Judicial District Court, and Michael A. Patterson are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] The workers' compensation judge in this case was Honorable Anthony P. Palermo, of District 5.
[3] The notice on page one of the form varied slightly.
[4] The focus of Dulin's appeal is on the WCJ's findings relative to the effect that Dulin's answers had on Levis' ability to receive reimbursement from the second injury fund. On the other hand, Levis urges that the law simply requires proof that the untruthful answer directly relates to the medical condition for which a claim for benefits is made to support a finding that benefits have been forfeited by the employee. Having satisfied its burden of proof in this respect, Levis submits that consideration of the prejudicial affect on reimbursement, even though shown in this case, was unnecessary.
[5] Notably, on a pre-employment questionnaire completed by Dulin on April 16, 1996, Dulin indicated that he began attending Sardis High School in Sardis, Mississippi, in 1969 and graduated from that high school in 1972.
[6] LSA-R.S. 23:1378(A) establishes that an employer is reimbursed from the second injury fund when the employer "knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability." However, the right to reimbursement is limited to circumstances where the permanent partial disability merges with a subsequent injury "to cause a greater disability than would have resulted from the subsequent injury alone." LSA-R.S. 23:1371(A); Wise v. J.E. Merit Constructors, Inc., 707 So.2d at 1220.
[7] Having concluded that Levis satisfied the "prejudice to the employer" element of LSA-R.S. 23:2801.1, we need not address whether the untruthful answer affected Levis' ability to recover from the second injury fund.