JUDGE SANDRA CABRINA JENKINS
This is a workers' compensation case. Claimant Ryan Lovas appeals the June 21, 2018 judgment of the Workers' Compensation Judge ("WCJ") finding that Mr. Lovas had forfeited his entitlement to additional compensation benefits from his former employer, Turner Industries Group, LLC ("Turner"). We conclude that the WCJ was *132 not manifestly erroneous in finding that Mr. Lovas willfully made a false statement or representation for the purpose of obtaining benefits or payments, in violation of La. R.S. 23:1208 ; and that he failed to respond truthfully to Turner's questionnaire about his previous medical history, in violation of La. R.S. 23:1208.1. We also conclude that Turner did not waive its affirmative defense of fraud. Accordingly, we affirm the WCJ's judgment dismissing Mr. Lovas's workers' compensation claim, with prejudice.
FACTUAL AND PROCEDURAL BACKGROUND
On June 30, 2017, Mr. Lovas filed a Disputed Claim for Compensation ("Claim") due to a work-related injury he sustained on or about July 7, 2016. The accident is not disputed. Mr. Lovas was employed as a machinist at Turner, which was a subcontractor at the Phillips 66 Belle Chasse facility ("Phillips 66"). Mr. Lovas claimed that his shirt became caught when he was bushing in a lathe to disassemble a pump assembly. According to Mr. Lovas, because there were no safety guards on the machine, his shirt jerked him into the machine, with the jerking motion causing his right ankle to twist. Mr. Lovas said that when he was jerked around, he heard a pop in his ankle, and his left shoulder was pulled forcefully against the machine. In his Claim, Mr. Lovas asserted that he injured his left arm, left shoulder, back, right ankle, right leg, and left foot.
After the accident, Mr. Lovas was taken by a Phillips 66 ambulance to an on-site nurse, who put Mr. Lovas's ankle in a cardboard splint. Mr. Lovas was then transported by Plaquemines EMT to Ochsner emergency room in Gretna. According to Mr. Lovas, the emergency room ("ER") physician tried to reset the bones and placed Mr. Lovas's right leg in a splint. He was discharged from the ER at 9:00 p.m., with a referral to see an orthopedic surgeon. The next day, Mr. Lovas saw Dr. Douglas Lurie, an orthopedist recommended by Turner. Dr. Lurie diagnosed Mr. Lovas with a right ankle dislocation, right tib-fib syndesmotic disruption/dislocation, posterior malleolar fracture and proximal fibular fracture.
On July 8, 2016, Dr. Lurie performed an open reduction, internal fixation surgery on Mr. Lovas's right leg at Touro Infirmary. Dr. Lurie released Mr. Lovas to return to work on the same date as the surgery. After the surgery, a Turner employee picked up Mr. Lovas at home and drove him to work every day until he was released to drive. Mr. Lovas stated that he did not work, but took pain medication and sat in his wheel chair all day until it was time to be driven home. Turner continued to pay Mr. Lovas his full wages, and he received rehabilitation over the course of several months until he returned to full-duty work at his pre-injury position with Turner.
On January 9, 2017, a Phillips 66 safety inspector noticed that Mr. Lovas was failing to use the safety guard on the lathe machine, which resulted in Mr. Lovas being terminated from his employment with Turner. Mr. Lovas received unemployment benefits until he was hired as a machinist with Simmons Plating and Grinding on February 7, 2017. On October 13, 2017, Mr. Lovas was laid off from this position due, in part, to a reduction in the workforce.
On June 29, 2017, nearly a year after the accident, Mr. Lovas reported to Dr. Lurie that he was experiencing back pain and *133 "foot drop,"[1] which Mr. Lovas attributed to the July 7, 2016 accident. Dr. Lurie evaluated him and released him to return to work. On that same day, Mr. Lovas filed his Claim with the Office of Workers' Compensation ("OWC"). Turner filed an Answer to the Claim, asserting the affirmative defense of fraud under the workers' compensation statutes.
The WCJ held a trial on the merits on March 22, 2018. In its June 21, 2018 judgment, the WCJ decreed that, although Mr. Lovas injured his right ankle as a result of the work-related accident on July 7, 2016, Mr. Lovas suffered from preexisting back injuries and did not meet his burden of showing a causal connection between the work accident and his current complaints of back pain and foot drop. The WCJ also found that Mr. Lovas made false statements for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208, and false statements in a medical questionnaire that prejudiced the employer's rights under La. R.S. 23:1208.1. The WCJ ruled that Mr. Lovas forfeited his right to any additional workers' compensation benefits due to his violations of La. R.S. 23:1208 and 23:1208.1. The WCJ dismissed the action, with prejudice. Mr. Lovas appealed.
DISCUSSION
Standard of Review
We review the factual findings of the WCJ under the manifest error/clearly wrong standard of review. Dow v. Chalmette Rest., Ltd. , 15-0336, p. 8 (La. App. Cir. 5/18/16), 193 So.3d 1222, 1228. "However, 'when legal error interdicts the fact-finding process in a workers compensation proceeding,' our review of those findings is conducted de novo ." Id. (quoting Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp. , 11-0179, p. 3 (La. App. 4 Cir. 6/29/11), 70 So.3d 988, 990 ). "We likewise review the WCJ's legal conclusions de novo ." Dow , 15-0336, p. 8, 193 So.3d at 1228.
In this appeal, Mr. Lovas lists two assignments of error.
Assignment of Error No. 1
In his first assignment of error, Mr. Lovas contends that the WCJ committed legal error in finding that Mr. Lovas committed fraud because Turner failed to allege fraud in its Pre-trial Statement.
Mr. Lovas concedes that the WCJ, in its written reasons for judgment, noted that Turner filed an Answer to Mr. Lovas's Claim in which it asserted, as an affirmative defense:
FOURTEENTH DEFENSE
TURNER provides notice that should a misrepresentation of defense develop under law, it will seek dismissal of any claims and assert its right to recovery of all funds and expenses per LSA-R.S. 23:1208 or 23:1208.1.
Mr. Lovas asserts that Turner's failure to allege fraud in its Pre-trial Statement or in a reconventional demand precludes the WCJ from considering the issue of Mr. Lovas's alleged fraud under La. R.S. 23:1208 and 23:1208.1. According to Turner, under LWC Hearing Rule 6007, the pre-trial statement "shall" include "issues to be litigated," and "no new issues shall be raised except by written order of the judge for good cause or upon mutual agreement of the parties." See La. Admin. Code tit. 40, Pt. I, § 6007. Mr. Lovas asserts that "[t]he mandatory language of Hearing Rule 6007 does not permit a party *134 to present issues at trial that were not listed in its pre-trial statement, and thereby prevents the manifest injustice that undue surprise imposes upon an opposing party." Thus, according to Mr. Lovas, Turner's claims of fraud were waived even though they appeared in Turner's Answer to Mr. Lovas's Claim.
We disagree. Louisiana courts have held that an allegation of fraud in a workers' compensation case is an affirmative defense that must be specially pled in the answer. See Messina v. Isle of Capri Casino , 04-1061, p. 6 (La. App. 3 Cir. 12/22/04), 891 So.2d 780, 785 ; Gotte v. Barnes Personnel Mgmt., Inc ., 13-420, p. 4 (La. App. 3 Cir. 3/12/14), 133 So.3d 1274, 1278 ; Varnado v. Sanderson Farms, Inc. , 14-1305, p. 2 (La. App. 1 Cir. 3/6/15), 166 So.3d 340, 341 ; Wise v. J.E. Merit Constr., Inc. , 97-0684, pp. 5-6 (La. 1/21/98), 707 So.2d 1214, 1217 ("A claimant's untruthful statement regarding his permanent partial disability which prejudices his employer's ability to seek reimbursement from the fund gives rise to an affirmative defense under La. R.S. 23:1208.1...."); Jackson v. M.R. Pittman , LLC , 08-0966, p. 1 (La. App. 4 Cir. 2/11/09), 5 So.3d 906, 908.
Because Turner properly pled fraud as an affirmative defense in its Answer to Mr. Lovas's Claim, there was no undue surprise or manifest injustice. Thus, we find no merit in Mr. Lovas's argument that Turner's fraud claims were waived because they were not asserted in Turner's Pre-trial Statement.
Assignment of Error No. 2
In Mr. Lovas's second assignment of error, he contends that even if Turner had properly alleged fraud, the WCJ nonetheless abused its discretion in finding that Turner satisfied its burden of proving fraud under La. R.S. 23:1208 and 23:1208.1.
La. R.S. 23:1208.1
Mr. Lovas contends that the WCJ erred in finding that he violated La. R.S. 23:1208.1, the forfeiture statute which provides as follows:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical condition are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
"The purpose of La. R.S. 23:1208.1 is to allow the employer to ask prospective or current employees about prior injuries." Boh Bros. Constr. Co. v. Price , 00-2233, p. 3 (La. App. 4 Cir. 8/29/01), 800 So.2d 898, 901. "It applies to employment-related questioning of an employee or prospective employee, by an employer, concerning a prior injury, when there is no pending workers' compensation claim." Id .
The requirements for forfeiture are: (1) an untrue statement; (2) prejudice to the employer; and (3) compliance with the notice requirements. Alexis v. Alton Ochsner Found. Hosp ., 07-0355, p. 5 (La. App. 4 Cir. 8/29/07), 966 So.2d 673, 676-77.
*135 Untruthful Statements
We first look at whether Mr. Lovas made untruthful statements on Turner's Second Injury Fund Questionnaire (the "Questionnaire") that Mr. Lovas completed and signed on April 14, 2016. At the top of the Questionnaire was the following bold-faced, typed notice: "FAILURE TO ANSWER TRUTHFULLY AND/OR CORRECTLY TO ANY OF THE QUESTIONS ON THIS FORM MAY RESULT IN A FORFEITURE OF YOUR WORKERS COMPENSATION BENEFITS UNDER LA R.S. 23:1208.1. "
The Questionnaire asked, "Do you currently have or have you ever had the following." Following that statement was a single-spaced list of various medical conditions, diseases, and situations to which the respondent was to mark "yes" or "no." Mr. Lovas responded "no" to the question, "Have you ever injured/had trouble with your back or worn a back brace/support?" Mr. Lovas also responded "no" to the question of whether he had ever been a patient in a hospital or clinic.[2]
At trial, when asked about his responses to the Questionnaire, Mr. Lovas testified that he understood the back-pain question as asking whether he was having back pain at the time he completed the Questionnaire. He also testified that, "in his mind" he did not have an injury to his back, but that his sore back resulted from working long hours. Mr. Lovas denied that he was ever treated for low back pain before the accident.
Mr. Lovas's medical records introduced at trial confirm that, although Mr. Lovas answered "no" to both questions, he did, in fact, have prior back problems, and he did go to a hospital or clinic for treatment of his complaints. Specifically, these records show that in the year before he completed the Questionnaire, Mr. Lovas sought treatment for chronic back pain at least five times.
At trial, Mr. Lovas was asked about his February 28, 2015 visit to Urgent Care, where he complained of constant lower back pain on a scale of 10/10 (with 10 being the "worst imaginable"). The records show that he described his back pain as "sharp, dull, aching, throbbing, spasmodic and shooting." The records also reflect that Mr. Lovas received a muscular injection of Medrol, and a prescription for a narcotic pain medication. He was directed to follow up with his PCP for "chronic back pain management." Mr. Lovas testified that he didn't remember this February 2015 visit and treatment at Urgent Care.
On March 15, 2015, Mr. Lovas presented to Ochsner West Bank Emergency Room for shooting and throbbing sciatica pain,[3] which he said he had experienced for the previous eight months, and which was radiating into his lower right leg. The records show that the medical care provider prescribed Oxycodone to Mr. Lovas, gave him an intramuscular injection for pain, and recommended that Mr. Lovas consult with an orthopedic specialist. At trial, Mr. Lovas testified that he could not recall this visit and treatment, although he recalled that he was experiencing pain in his buttocks.
On March 20, 2015, Mr. Lovas presented to Urgent Care complaining again of constant lower back pain. Mr. Lovas reported *136 that the problem was made worse by exertion, movement, sitting, and standing. Upon examination, Mr. Lovas exhibited symptoms consistent with sciatica. He was directed to follow up with physical therapy. At trial, Mr. Lovas recalled this visit, where he complained of constant low back pain, which he said arose from pulling a muscle in his back.
On April 16, 2015, Mr. Lovas presented to Ochsner West Bank Emergency Room complaining of "worsening" back pain. He reported having "chronic back pain in the past." Mr. Lovas stated that he was cleaning and "threw out [his] back." The records show that he described the pain as radiating through his right buttocks. Mr. Lovas did not recall that he ever received injections for back pain, although they are reflected in the medical records. He did recall telling the ER doctor that he had scheduled a pain management appointment with Dr. Kirby, although he did not go. He also scheduled a visit with Dr. Craig at the Bone and Joint clinic for the pain.
Mr. Lovas also recalled going back to the Ochsner ER three days later, April 19, 2015, for his back pain. Mr. Lovas was told that the ER could not continue to treat his back pain, and that he needed to follow up with his orthopedist or pain management physician.
These medical records confirm that, even though Mr. Lovas denied that he ever had a back injury or ever received treatment for low back pain, he repeatedly sought treatment for continuing back pain in 2015, and was given narcotic medication and intramuscular injections. We see no manifest error in the WCJ's finding that Mr. Lovas gave untruthful answers on the Questionnaire.
Notice Requirements
Because untruthful answers alone do not result in the forfeiture of benefits, the second step is to determine whether Turner's Questionnaire complied with the notice requirements of the statute by advising the employee that his failure to answer truthfully may result in forfeiture of workers' compensation benefits. Boh Bros , 00-2233, pp. 6-7, 800 So.2d at 903. The notice on Turner's Questionnaire is in bold-faced, block lettering of no less than ten-point type. It informs an employee/applicant who falsifies or misrepresents an answer on a medical questionnaire regarding preexisting medical conditions that his claim for workers' compensation benefits may be jeopardized. Thus, we find the notice provision in this case to be sufficient.
Prejudice to the Employer
[T]he legislature imposes the penalty of forfeiture only when the employer is prejudiced." Alexis , 07-0355, p. 5, 966 So.2d at 676. An employer is prejudiced by one of two circumstances. Id ., 07-0355, p. 5, 966 So.2d at 677. An employer is prejudiced only when the false statement: (1) directly relates to the medical condition for which a claim is made; or (2) affects the employer's ability to receive reimbursement from the Second Injury Fund. Id .
In the first circumstance, the employee's untruthful answer must directly relate to the medical condition that is the subject of the claim. Id ."A direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition." Id.
Based on the evidence in the record, we find that the pre-employment condition of Mr. Lovas's back made the injury for which the present claim was filed inevitable or very likely to occur. Mr. Lovas's duties as a machinist required heavy lifting, bending, reaching, and turning, which *137 made him susceptible to injury because of the presence of his pre-existing history of back pain. The physical demands of Mr. Lovas's job required Mr. Lovas to use his previously injured back. A recurrence of that condition was likely to happen while Mr. Lovas performed his regular duties for Turner.
Thus, we find that Turner demonstrated that Mr. Lovas's untruthful answers on the medical questionnaire directly related to the medical condition that is the subject of the instant claim, thereby satisfying the "prejudice to the employer" element under La. R.S. 23:1208.1. We find that the WCJ was not manifestly erroneous in concluding that Mr. Lovas forfeited additional workers' compensation benefits because of violations of La. R.S. 23:1208.1.[4]
La. R.S. 23:1208
In addition to La. R.S. 23:1208.1, in which the claimant makes a falsity on an employer's medical questionnaire before the accident or injury, the workers' compensation statutes have a separate anti-fraud forfeiture provision by which employers may affirmatively defend against paying a claim. Wise , 97-0684, p. 6, 707 So.2d at 1217. La. R.S. 23:1208 applies to situations in which, during a pending claim, a claimant has made a false statement or misrepresentation for the specific purpose of obtaining workers' compensation benefits. Id . La. R.S. 23:1208 provides that:
[i]t shall be unlawful for any person, for the purposed of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
In additional to criminal and civil penalties, the fraud provisions state that any person violating Section 1208 "may be ordered to make restitution" and "shall forfeit any right to compensation benefits under this Chapter." La. R.S. 23:1208(D), (E). Fraudulent statements encompass those made to anyone, including the employer, physicians, or insurer. Resweber v. Haroil Constr. Co., 94-2708, pp. 1-2 (La. 9/5/95), 660 So.2d 7, 9.
In its reasons for judgment, the WCJ found that Mr. Lovas forfeited his entitlement to compensation under La. R.S. 23:1208 because he denied prior back pain or injuries in his medical history provided to doctors, and in his trial testimony.
Mr. Lovas contends that he did not violate La. R.S. 23:1208 because any prior medical treatment for back pain was inconsequential and not related to any particular injury. According to Mr. Lovas, he did not have any prior operations, surgeries, injections or any serious and ongoing low back issues. He asserts that he suffered some occasional back pain due to the heavy manual labor he performed as a machinist, but that this back pain was "transitory, inconsequential and was treated by conservative measures."
In its written reasons for judgment, the WCJ explained the basis for its finding that Mr. Lovas made willful misrepresentations or false statements in order to obtain workers' compensation benefits:
A claimant can receive workers' compensation benefits when a work accident aggravates a pre-existing condition, but Claimant denied prior back pains or injuries in his discovery, the Second Injury Fund questionnaire, medical history provided to doctors, deposition testimony *138 and trial testimony. Upon reviewing the record regarding Claimant's prior medical history, the Court notes several occasions wherein Claimant treated for back pain and received injections and/or medication.... The Court reviewed the record in this matter and upon doing such, the Court finds that Claimant made willful misrepresentations for the purpose of obtaining workers' compensation benefits.... Claimant gave false information regarding his past medical history ... [and] [h]e also omitted his medical history regarding prior back complaints to doctors who treated him after the July 7, 2016 [accident]. Claimant's past medical condition was significant to his claim for workers' compensation benefits as it was directly related to the back complaints he is alleging as a result of the July 6 [sic], 2016 work accident.... Claimant has violated La. R.S. 23:1208 and La. R.S. 23:1208.1. Claimant has forfeited and is not entitled to any further benefits under the Louisiana Workers' Compensation Act, including penalties and attorney fees.
The WCJ's written reasons reflect that Mr. Lovas's credibility was a significant consideration in the WCJ's conclusion that he had committed fraud in violation of La. R.S. 23:1208 and La. R.S. 23:1208.1. Based on a thorough review of the record, we do not find that the WCJ committed manifest error or was clearly wrong in its determination. The WCJ was allowed to view Mr. Lovas in person and to hear his responses to questions posed by both his and Turner's attorneys. The WCJ had access to Mr. Lovas's prior statements and medical records that had been admitted into evidence. The record evinces discrepancies between Mr. Lovas's medical records -- which indicate that he has sustained injuries similar to the instant matter -- and his trial and deposition testimony. The WCJ could have determined that Mr. Lovas was able to understand the object of the question when he was asked about past back problems. The WCJ could have found that Mr. Lovas was able to deduce that these past problems were, in fact, "injuries," which could have led it to determine that a forfeiture of benefits was justified. Accordingly, we affirm the WCJ's findings that Mr. Lovas forfeited additional workers' compensation benefits because of his untruthful statements and willful misrepresentations.
CONCLUSION
For the foregoing reasons, the WCJ's June 21, 2018 judgment dismissing Mr. Lovas's suit is affirmed.
AFFIRMED

"Foot drop" is dropping of the foot from a peroneal or tibial nerve lesion that causes paralysis of the anterior muscles of the leg. Dorland's Illustrated Medical Dictionary 696 (29th ed. 2000).

Mr. Lovas marked "no" to every single medical question presented on the Questionnaire.

"Sciatica" is defined as "[p]ain in the lower back and hip radiating down the back of the thigh into the leg ... now known to usually be due to herniated lumbar disk compromising the L5 or S1 root." Steadman's Medical Dictionary 1580 (26th ed.1995).

We need not, therefore, address whether the untruthful answers affected Turner's ability to recover from the Second Injury Fund.