707 So.2d 1214 (1998)
Larry D. WISE
v.
J.E. MERIT CONSTRUCTORS, INC.
No. 97-C-0684.
Supreme Court of Louisiana.
January 21, 1998.
Rehearing Denied February 20, 1998.
*1215 William D. Dyess, Arthur Cobb, Jr., Baton Rouge, Michelle M. Sorrells, Baton Rouge, for applicant.
Kirk L. Landry, Keogh, Cox & Wilson, Baton Rouge, for respondent.
KNOLL, Justice.[*]
This application concerns whether the hearing officer erred in ordering the claimant's worker's compensation benefits forfeited because he had failed to answer truthfully the employer's second injury fund questionnaire concerning a prior injury. We granted writs to consider that issue and to resolve a conflict among the circuits regarding the statutory interpretation of what constitutes a direct relationship between claimant's answer and the subsequent injury that is the subject of the claim. After carefully reviewing the record and the applicable law, we conclude that under the circumstances of this case, the lower courts' forfeiture of claimant's worker's compensation benefits was in error.

FACTS AND PROCEDURAL HISTORY
In 1991, claimant, Larry D. Wise, worked for Encoat, Inc. as a laborer. Claimant explained his duties there as follows: "Well, my job, Mr. Cobb, was to `G' pipes. I had an electronic wand, and it contained see like 2,500 volts. I have to walk down eighty feet of pipe every day for every eight to twelve hours a day." While at Encoat, claimant developed fluid on his right knee, for which *1216 he was treated at Lane Memorial Hospital on August 31, 1991. At that time, claimant was diagnosed with traumatic arthritis and contusion and given prescription medication. The employer placed claimant on light duty for one week. Thereafter, the condition cleared and claimant resumed his regular duties.
The hearing officer found that single incident to be quite minor. Claimant had missed no work and was given light duty for only one week. Claimant thereafter resumed his normal duties as a full-time laborer with Encoat until the plant closed in 1993. There is no evidence of any other problems with claimant's right knee during those years.
Following the plant closing, claimant sought employment with defendant, J.E. Merit Constructors. As part of the hiring process, claimant was required to take a physical examination and to fill out Merit Constructors' form entitled "Louisiana Second Injury Fund Questionnaire." Claimant passed the physical examination which included bending, stretching, and squatting. On January 27, 1994, claimant completed Merit Constructors' questionnaire. A copy of claimant's completed questionnaire is appended to this opinion. [Editors Note: Questionnaire can be requested from Supreme Court Clerk's Office.]
Near the top of the first page, the form asked: "ARE YOU BOTHERED WITH OR HAVE YOU EVER HAD THE FOLLOWING:" Following that statement was a listing, single-spaced, of seventy-five medical conditions or situations to which the responder was to mark "yes" or "no." Following those were eight additional medical inquiries. At the bottom of the second page was a notice cautioning responders to answer truthfully. Claimant testified that a Merit Constructors representative cautioned claimant that he would not get the job if he had a problem or injury. Against the backdrop of those conflicting messages, claimant proceeded to complete the questionnaire.
Claimant marked "yes" on only two questions: "Has your weight changed more than 15 pounds in the last 2 years?" and beside a question regarding amputations.[1] Claimant made no response to "Arthritis." Beside the remaining conditions, claimant drew a continuous line indicating a "No" response. The questionnaire shows that claimant then amended his response to "Knee Problems" by scratching out his original "No" answer, but did not mark "Yes."
Merit Constructors never questioned claimant regarding his responses to the questionnaire. Merit Constructors never asked claimant why he left "Arthritis" blank or why he scratched out his "No" answer to "Knee Problems." Merit Constructors never sought to clarify the ambiguity and thereby edify itself regarding the existence of a permanent partial disability.
Claimant began working for Merit Constructors as a laborer on February 2, 1994. The multiproducts division, where claimant worked, produced raw materials that were transported on conveyor belts. Some of the powder and pellet-like granules fell from the belts to the floor. It was claimant's duty to clean up the spills with a shovel, push broom, and wheelbarrow.
Claimant worked at defendant's factory without incident until May 15, 1994. Claimant testified that on that date he was cleaning in a tight space between two reactors. There, he slipped on some materials on the floor, twisted, and fell. He hit his right knee hard against one of the reactor tubes. Claimant reported the injury to his labor foreman. Although limping and in pain, he completed his duties for the day. Claimant reported his continued pain over the next three months, but did not seek medical care. Claimant testified that he iced his knee at night, took aspirin, and went to work each day because he needed the job.
On August 18, 1994, claimant was asked to clean up a large spill on the second floor. Claimant testified that as he was wheeling some of the swept up products to the reject bin, his right knee slipped. As claimant fell, his right knee buckled under him. Claimant reported this injury to the supervisor and asked to go home to nurse his painful knee. Claimant testified that his supervisor told *1217 him that he needed a doctor's excuse before returning to work.
The next day, claimant sought medical attention at the Veteran's Hospital in Baton Rouge. Medical evidence reveals that claimant suffered a torn meniscus to his right knee, for which he underwent two arthroscopic surgeries. The first surgery occurred on September 21, 1994, less than a month after claimant sought medical care. Claimant never returned to work and has received no worker's compensation benefits from Merit Constructors.
Claimant filed a worker's compensation claim against J.E. Merit Constructors on August 14, 1995. As an affirmative defense, Merit Constructors argued that claimant's failure to divulge his 1991 knee problem on the company's "Second Injury Fund" questionnaire required forfeiture of claimant's claim under La.R.S. 23:1208.1. Merit Constructors contends that claimant's response to the question regarding knee problems amounted to an untruthful statement. Merit Constructors further asserts that claimant's failure to divulge the 1991 traumatic arthritis as a knee problem directly relates to the 1994 torn meniscus, which is the subject of the current claim.
After the presentation of claimant's case, the hearing officer granted Merit Constructors' motion for involuntary dismissal on the basis of forfeiture under La. R.S. 23:1208.1.[2] The hearing officer factually found the 1991 injury to be "a relatively minor incident, based upon what I've read in the Lane Memorial Records." The hearing officer also made a credibility determination: "I do believe you.... I think you thought about it and then canceled out your feelings with regard to telling them about the knee because it didn't require a great deal of treatment and because you hadn't had any problems with it." And later: "I believe you're telling the truth when you say that the reason you decided not to say that you had a knee problem is because you didn't have one at the time that you filled this out."
The hearing officer then concluded that claimant had answered "No" concerning knee problems because claimant had not answered what the question was asking on its face. The hearing officer also concluded that because both injuries were to the same part of the body, the compensation claim was defeated under the "hard line" interpretation of La.R.S. 23:1208.1 found in Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7.
The court of appeal, in an unpublished opinion, affirmed, finding that the hearing officer had not manifestly erred.

LAW AND DISCUSSION
A work injury subsequent to a known permanent partial disability qualifies an employer to seek reimbursement for worker's compensation benefits from a statutorily designated "Second Injury Fund" under certain circumstances. A claimant's untruthful statement regarding his permanent partial disability which prejudices his employer's ability to seek reimbursement from the fund gives rise to an affirmative defense under La.R.S. 23:1208.1, whereby the injured employee forfeits all compensation benefits.
The worker's compensation statutes actually provide two separate anti-fraud forfeiture provisions by which employers may affirmatively defend against paying a claim. La. R.S. 23:1208 applies to situations where, during a pending claim, a claimant has made a false statement or misrepresentation for the specific purpose of obtaining worker's compensation benefits. The claimant, by making the false statement, seeks to defraud the system. The defense under La.R.S. 23:1208.1, the issue at hand, is entirely separate. La.R.S. 23:1208.1 is applied when a falsity was made on an employer's medical questionnaire, before the accident or injury. The significance of the falsity is that an untruthful statement on the questionnaire regarding a preexisting condition is prejudicial to the employer's ability to recover from a second injury fund. Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. Therefore, this court, in Resweber, has concluded that the legislature imposes the penalty of forfeiture only when the employer is prejudiced. An employer is prejudiced *1218 only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." La.R.S. 23:1208.1 (emphasis added); Resweber. Reimbursement from the fund executes the legislative policy expressed in La.R.S. 23:1371(A): "to encourage the employment of physically handicapped employees who have a permanent, partial disability." If not for the fund, many employers would be reluctant to hire employees with disabilities because of the increased worker's compensation exposure. Denis P. Juge, Louisiana Workers' Compensation, § 18.4 (1997); H. Alston Johnson III, Workers' Compensation Law and Practice § 234 (13 Louisiana Civil Law Treatise, 3rd ed.1994).
Forfeiture is a harsh remedy. Thus, statutory forfeiture must be strictly construed. La.R.S. 23:1208.1 provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type. (Emphasis added.)
La.R.S. 23:1208.1 thus provides for forfeiture under narrow circumstances: There must be an untruthful statement; prejudice to the employer; and compliance with the notice requirements of the statute. Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. An employer has the burden of proving each element within the statute. The lack of any one of the elements is fatal to an employer's avoidance of liability. Mullins v. Courtney Equipment, 95-989 (La. App.3 Cir. 1/31/96), 670 So.2d 329.
To assist employers in meeting their statutory burdens, section 1208.1 permits an employer to obtain medical information from the employee or applicant concerning preexisting conditions. The answers provided on the questionnaire allow the employer to discern if he has hired (or will hire) a worker with a permanent partial disability for second injury fund purposes. Because an employer's medical history questionnaire can be used to establish that an employer knowingly hired or retained an employee with a permanent partial disability, the legislative grant that flows from § 1208.1 is vital. See Resweber v. Haroil Const. Co., 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7.
La.R.S. 23:1378(F) defines permanent partial disability (PPD) as "any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become injured." Thirty conditions listed in § 1378(F) are presumed permanently partially disabling. Therefore, it is always lawful for an employer to make inquiries in its questionnaire regarding the thirty listed conditions because answers to those questions establish employer knowledge of the existence of PPDs in accord with the statute's intent. See Resweber, supra.
Statutes are to be interpreted in ways effectuating their purpose. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752. Thus, in order to satisfy the intent of § 1208.1, the remaining questions must be narrowly tailored.[3] *1219 Knowledge about general medical conditions are insufficient to establish employer awareness of the existence of PPDs. In Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, for instance, an employee's dizziness, blackouts, and tunnel vision were too general to make the employer aware of the existence of a heart condition. 576 So.2d 1133 (La.App. 3 Cir.), writ denied, 580 So.2d 383 (La.1991).
In King v. Grand Cove Nursing Home, a questionnaire not narrowly tailored to provide the employer with knowledge about preexisting conditions prejudicial to the employer's second injury fund reimbursement potential was found ambiguous. 93-779 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, writ denied, 94-0865 (La.5/13/94), 641 So.2d 204. The King court observed that overly broad questions "could well be interpreted as referring to a chronic or long standing condition." Id. at 352. We note that under those circumstances, the questions do not serve the purposes of La.R.S. 23:1208.1 for which the legislature granted the employer the right to make inquiries. On the contrary, such questions are meaningless for the statute's intended purpose. Therefore, we agree with King that such ambiguous questionnaires are to be construed against the employer in determining whether the employee knowingly failed to answer the questionnaire truthfully.
A survey of cases indicates that an employee/applicant had failed to answer truthfully only when he clearly indicated "no" on the employer's questionnaire, denying the existence of a known medical condition. See, e.g., Carter v. Our Lady of the Lake Regional Medical Center, 612 So.2d 805 (La.App. 1 Cir.1992); Williams v. Fibrebond, 27,401, 27,402 (La.App. 2 Cir. 9/27/95), 661 So.2d 562; Burris v. LaSalle Parish Police Jury, 95-696 (La.App. 3 Cir. 11/2/95), 664 So.2d 680; Stevens v. Bechtel Construction Corp., 94-1825 (La.App. 4 Cir. 4/26/95), 655 So.2d 423, writ denied, 95-1823 (La.10/27/95), 661 So.2d 1346; and Rivera v. West Jefferson Medical Center, 96-152, 96-153 (La.App. 5 Cir. 7/30/96), 678 So.2d 602. There has been no case in which an employee has scratched out a "no" answer, thereby revealing ambiguities, as in the present case.
Untruthful answers alone do not result in the forfeiture of benefits. The employer must also prove that it provided the employee with statutory notice, not an issue in this case, and that the untruthful statements were prejudicial to the employer. As noted in Resweber, supra, an employer is prejudiced by one of two circumstances. In the first prong of the "prejudice" test, the employee's untruthful answer must directly relate to the medical condition that is the subject of the claim.
There is a split in the courts of appeal on the interpretation of "directly relates to the medical condition for which a claim for benefits is made" found in La.R.S. 23:1208.1. The First Circuit, in Carter v. Our Lady of the Lake Regional Medical Center, 612 So.2d 805 (La.App. 1 Cir.1992), affirmed the forfeiture of benefits where the claimant denied having a preexisting injury to her neck and back on the employer's medical questionnaire. The court noted that the current and past injuries were to the "exact same areas." Id. at 807. See also Trench v. Harmony Construction Co., 95-1851 (La.App. 1 Cir. 4/4/96), 672 So.2d 330, writ denied, 96-1130 (La.6/7/96), 674 So.2d 973, which urged a "straightforward reading" of § 1208.1.
The Second Circuit, in Williams v. Fibrebond Corp. 27,401, 27,402 (La.App. 2 Cir. 9/27/95), 661 So.2d 562, rejected the anatomical identity test. Williams adopted the "inevitability" test established by the Third Circuit in finding a direct relation where, "given the pre-job medical condition of the employee, a recurrence of that condition or some other type of injury was bound to happen while the employee was preforming his regular job duties." Id. at 566.
The Third Circuit, in Williams v. Holly Hill Nursing Home, 93-557 (La.App. 3 Cir. 3/30/94), 640 So.2d 383, writ denied, 94-1134 (La.7/1/94), 641 So.2d 208, and the Fourth Circuit, in Stevens v. Bechtel Const. Corp., 94-1825 (La.App. 4 Cir. 4/26/95), 655 So.2d 423, writ denied, 95-1823 (La.10/27/95), 661 So.2d 1346, also rejected the anatomical location test utilized by the First Circuit. The Third Circuit in Cudd v. George Koch & Sons, 94-372 (La.App. 3 Cir. 11/2/94), 649 So.2d 505, writ denied, 94-2920 (La.2/9/95), *1220 650 So.2d 244, adopted the interpretation set forth in King v. Grand Cove Nursing Home, 93-779 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, writ denied, 94-0865 (La.5/13/94), 641 So.2d 204. The Third Circuit concluded that a direct relationship pursuant to La.R.S. 23:1208.1 existed when, as a consequence to a preexisting medical condition, the latter injury was inevitable or very likely to occur. Had the legislature intended an anatomical interpretation of § 1208.1, that intent would have been mentioned in its choice of words.
The legislature has adopted a policy whereby we are to interpret the chapter in ways effectuating relief for workers when their injuries are work related. Harold v. La Belle Maison Apartments, 643 So.2d 752 (La.1994). That policy, balanced with the language of § 1208.1 and the harshness of forfeiture, requires us to reject an interpretation of the statute based on a mere anatomical connexity. Instead, we find the interpretation of "directly relates" relied upon by the Second, Third, and Fourth Circuits more in keeping with the clear wording of the statute and the legislative intent. That is, a direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition.
The second prong of the "prejudice to the employer" test is that the employee's answer to the defendant employer's questionnaire must affect the employer's ability to recover from the second injury fund. La.R.S. 23:1208.1; Resweber, supra. La.R.S. 23:1378(A) establishes that an employer is reimbursed from the second injury fund when the employer "knowingly employs or knowingly retains in his employment an employee who has a permanent partial disability." However, the right to reimbursement is limited to circumstances where the PPD merges with a subsequent injury "to cause a greater disability than would have resulted from the subsequent injury alone." La.R.S. 23:1371(A).
An employer's right to reimbursement is not automatic. The employer has the burden of proving each element entitling him to benefits. Commercial Union Insurance Co. v. Worker's Compensation Second Injury Board, 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933. Thus, to be reimbursed from the second injury fund, an employer must prove the existence of three elements. An employer must prove that the employee had a PPD satisfying the requirements of La.R.S. 23:1378(F). That is, the PPD must be so serious as to hinder employment. Id. The employer must also prove he had actual knowledge of the employee's PPD before the occurrence of the injury forming the basis of compensation claim. Chandler Parts and Service, Inc. v. Louisiana Worker's Compensation Second Injury Board, 576 So.2d 1133 (La.App. 3 Cir.), writ denied, 580 So.2d 383 (La.1991). Finally, the employer must prove that the PPD merged with the injury to produce a greater disability. La. R.S. 23:1371(A); La.R.S. 23:1378(A).

APPLICATION OF LAW TO FACTS
In the case sub judice, the hearing officer ruled that claimant had forfeited his rights to benefits under La.R.S. 23:1208.1 on grounds that the employer's rights had been prejudiced. Specifically, the hearing officer had applied in good faith the "direct relation" test utilized in her jurisdiction, the First Circuit. That is, because the 1991 injury and the 1994 injury involved the same body part, claimant had forfeited his rights to benefits under La.R.S. 23:1208.1. We reject the anatomical identity test. Therefore, we must reject the hearing officer's legal conclusion that a direct relationship existed on that basis.
Now, we must next determine whether the subsequent injury was inevitable or very likely to occur as a result of the presence of the preexisting condition. Claimant's preexisting condition was traumatic arthritis, diagnosed in 1991. After treatment and one week of light duty at work, claimant's condition was completely asymptomatic for two and a half to three years. This was during a time in which claimant worked, full time, as a laborer.
Claimant's subsequent injury occurred in May, 1994. Claimant slipped on some raw material at Merit Constructors, hit his knee hard against a reactor tube, and thereby injured his right knee. Claimant worked in pain for three months following this injury. He re-injured his knee August, 1994. The medical records following the 1994 injuries show that claimant had suffered a meniscus *1221 tear. Because of the meniscus tear, claimant required two arthroscopic surgeries and post-operative therapy.
There has been no showing on the record that the 1994 meniscus tear was inevitable or very likely to occur as a consequence of the 1991 diagnosis of traumatic arthritis.[4] Therefore, Merit Constructors has failed to prove a direct relation between claimant's answer to Merit Constructors' questionnaire and the 1994 injury that forms the basis of this claim.
We must next determine whether claimant's answer was prejudicial because it affected Merit Constructors' ability to be reimbursed from the second injury fund. Merit Constructors argues that its rights were prejudiced because claimant failed to divulge that he had traumatic arthritis to his right knee in 1991 and that non-disclosure prevented Merit Constructors from reimbursement from the second injury fund.
Reimbursement occurs when the employee has a PPD, when the employer has knowledge of the PPD, and when the PPD merges with a subsequent injury to result in a greater disability. La.R.S. 23:1378(A); La.R.S. 23:1371(A). According to La.R.S. 23:1378(F), the employer has the benefit of the presumption of the existence of a PPD when the condition is arthritis. La.R.S. 23:1378(F)(4). Assuming arguendo that the presumption is conclusive, that still does not, in and by itself, entitle Merit Constructors to reimbursement. Merit Constructors must also prove merger. La.R.S. 23:1371(A). In this case, even if claimant made a false statement and that statement deprived Merit Constructors from knowing about claimant's arthritis, Merit Constructors has not been prejudiced because there has been no showing on the record that claimant's arthritis merged with the separate trauma of a meniscus tear to produce a greater disability than would have occurred with the meniscus tear alone. Therefore, Merit Constructors has failed to prove an essential element entitling it to reimbursement from the second injury fund. La. R.S. 23:1371. As such, no forfeiture under La.R.S. 23:1208.1 can occur.
Additionally, we question the hearing officer's conclusion that claimant answered the questionnaire untruthfully. We must examine claimant's answers in light of the questionnaire.
Merit Constructors' questionnaire sought information about the conditions presumptively considered PPDs under La.R.. 23:1378(F). Similar to King, supra, the questionnaire sought further medical information in fifty-three additional questions, including whether claimant had ever experienced such common ailments as hay fever, headaches, or sore throat. Many of those fifty-three additional inquiries were not narrowly tailored to provide Merit Constructors with knowledge about preexisting conditions prejudicial to a second injury fund reimbursement claim.
We note that the hearing officer believed that the reason claimant did not respond affirmatively to the questions regarding arthritis and knee problems was because claimant had not suffered any symptoms since the 1991 injury, which the hearing officer herself concluded was "relatively minor." Claimant's interpretation that the question was asking about chronic conditions, coupled with a questionnaire not narrowly tailored to meet Merit Constructors' need to be informed about PPDs, renders Merit Constructors' questionnaire ambiguous. Ambiguous forms are to be construed against the employer when considering whether the employee knowingly answered untruthfully. King v. Grand Cove Nursing Home, 93-779 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, writ denied, 94-0865 (La.5/13/94), 641 So.2d 204.
The record shows that claimant did not answer the question concerning arthritis and scratched out a "No" answer to the question about knee problems. On the face of the questionnaire, claimant's answers are not untruthful, but rather ambiguous. A defendant employer is charged with proving each element entitling it to reimbursement. Commercial Union Insurance Co. v. Worker's Compensation Second Injury Board, 94-1202 (La.App. 3 Cir. 3/1/95), 651 So.2d 933.
*1222 Therefore, ambiguous answers cannot satisfy an employer's burden of proving knowledge regarding the presence of a PPD. Absent an employer's attempt to clarify ambiguous answers, an employer fails to prove that claimant has knowingly made an untruthful answer for which forfeiture is justified.
In response to claimant's ambiguous answers, Merit Constructors did nothing. It never questioned claimant regarding those ambiguous answers, nor did it seek to clarify the ambiguity and thereby inform itself as to the existence of a PPD as required by La. R.S. 23:1378. Therefore, Merit Constructors did not reasonably attempt to satisfy its statutory knowledge requirement. Under the circumstances of this case, where an ambiguous questionnaire is coupled with an employee's ambiguous response, Merit Constructors has failed to prove that claimant knowingly failed to answer the questionnaire truthfully. Because Merit Constructors has failed to prove each element required by La.R.S. 23:1208.1, forfeiture under that statute cannot occur.

DECREE
For the foregoing reasons, forfeiture under La.R.S. 23:1208.1 is not warranted. Accordingly, the judgment of the lower courts are reversed and set aside. This case is remanded to the Office of Worker's Compensation, Fifth District, for further proceedings, consistent with the view expressed herein.

REVERSED AND REMANDED.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, Justice, dissenting.
Today, the majority effectively rewrites La. R.S. 23:1208.1, changing the statute's clearly articulated employee's duty to disclose into the employer's duty to discover. The majority also overlooks a significant portion of that statute which would mandate affirming the lower courts. Therefore, I respectfully dissent.
I dissent primarily based on the majority's interpretation of "failure to answer truthfully" contained in La. R.S. 23:1208.1. The majority, after noting that we must strictly construe the statute, then interprets this language to mean "affirmatively state a falsehood." The language of "failure to answer truthfully" clearly refers to an omissiona failure to answeras well as to an affirmative misrepresentation. The statute at one point uses the language, "failure to answer" without including "truthfully." Such clear language cannot be interpreted to include only the commission of an affirmative misrepresentation.
The statute uses that precise language twice, along with the one instance omitting "truthfully," removing any doubt as to its intentional inclusion. The language of the statute clearly places a duty to disclose upon the prospective employee. The opinion judicially rewrites the statute and places a duty to discover upon the prospective employer.
Here, the employee in question clearly failed to answer truthfully by failing to answer as to "arthritis." As to his scratched out "no" regarding knee problems, he nonetheless failed to answer that question truthfully by not marking the "yes" block.
The statute provides for forfeiture upon failure to answer truthfully "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." La. R.S. 23:1208.1 (Emphasis added). The majority spends a great amount of effort dealing with employee Wise's knee problem and whether it satisfies the "directly related" prong of the statute, virtually ignoring the second, "or affects the employer's ability to receive reimbursement ..." prong. Because of this second prong and the use of the disjunctive "or," we need not digress into his previous knee problems or what constitutes directly related under the statute. Here, the employee's failure to answer truthfully as to arthritis has affected the employer's ability to recover from the second injury fund, thus satisfying the alternative second prong of the statute.
Arthritis is one of the conditions listed within La. R.S. 23:1378(F) which give rise to the presumption that the employer considered the condition to be a permanent partial disability (PPD). The employer's knowledge of the same will result in reimbursement from the Second Injury Fund provided the condition merges with a current compensable *1223 disability. La. R.S. 23:1378(A)(1). While acknowledging the presumption of arthritis as a PPD under Subsection (F), the majority then brushes it aside arguing that Merit was not prejudiced because "there has been no showing on the record that the claimant's arthritis merged ..." Op. at 1221. While it is correct that there was no showing of merger on the record, this argument overlooks that Merit, already successful on other grounds, was not required to make any such showing.[1] Most significantly, Merit never had the opportunity to show merger with respect to the arthritis because the employee's failure to answer as to the arthritis robbed Merit of the knowledge of the condition and the accompanying presumption which would have given Merit the opportunity to apply to the Second Injury Fund under La. R.S. 23:1378(A)(1). Had employee Wise answered truthfully by simply checking "yes" on the form, Merit, armed with the prerequisite knowledge of a presumed PPD, could then apply to the Fund based on that disability where Merit would then have to show merger to succeed in obtaining reimbursement. The lost opportunity to obtain reimbursement certainly prejudices the employer.
Therefore, because employee Wise failed to answer truthfully as to his arthritis and because such failure has in fact affected the employer's ability to receive reimbursement, I would affirm the forfeiture.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, Sec. 3.
[1] A portion of Wise's left little finger had been amputated on the job in 1981 for which he had received worker's compensation benefits for five weeks.
[2] Defense counsel actually moved for a directed verdict. However, since this was a non-jury trial, it is clear that counsel's procedural intent was to move for an involuntary dismissal under La. Code Civ.P. art. 1672 B.
[3] Although not raised in this application, an employer must also ascertain that his questionnaire is in accord with the federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (1990). Because of the ADA, an employer's questions are restricted. H. Alston Johnson III, Workers' Compensation Law and Practice § 234 (13 Louisiana Civil Law Treatise, 3rd ed.1994). However, an employer is permitted to seek information when there is a reasonable basis for the inquiry, such as for purposes of second injury fund recovery. Denis P. Juge, Louisiana Workers' Compensation § 18.3 (1997).
[4] Merit Constructors asserts that a 1995 diagnosis of traumatic arthritis to the right knee merged with the 1991 diagnosis to show a direct relationship. That argument ignores claimant's 1994 intervening injury, which is the subject of the claim.
[1] As the undisclosed arthritis affected the same later-injured knee, there is a possibility of merger.