STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 04-157

DWIGHT HICKMAN

VERSUS

JIM SMITH LOGGING, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 02-05703
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Marcus Miller Zimmerman
Attorney at Law
910 Ford St.
Lake Charles, LA 70601
(337) 433-1414
Counsel for: Plaintiff Appellee
Dwight Hickman

**H. O. Lestage, III**
**Attorney at Law**
**P. O. Box 880**
**DeRidder, LA 70634**
**(337) 463-8692**
**Counsel for: Defendant Appellant**
**American Interstate Ins. Co.**
**Jim Smith Logging**

**SAUNDERS, J.**

Issues on appeal to this court arise out of an employment relationship. Dwight Hickman was an employee of Jim Smith Logging when he suffered a back injury. At that time, Jim Smith Logging was insured by American Interstate Insurance. Mr. Hickman filed a 1008 claim form for compensation, but this request was denied by Jim Smith Logging. The Office of Workers' Compensation granted Mr. Hickman's request and denied the employer's affirmative defense based on La.R.S. 23:1208.1.

**FACTS**

On the morning of July 24, 2001, Dwight Hickman called Jim Smith to discuss a job opportunity. After some discussion, Mr. Smith told Mr. Hickman to report to the job site the following morning. Mr. Smith and Mr. Hickman both testified to the fact that it is customary in the logging business to hire someone verbally when that person's logging reputation is known. Mr. Hickman reported and was put to work as a saw hand. On that day or at some later date, he was given an employment application and medical questionnaire. Mr. Hickman was allowed to take these forms home to complete, rather than complete them on the job site prior to starting work. Mr. Hickman began his job that day.

Mr. Hickman took the forms home, and Debby Draper, a female acquaintance who lived in the home with him, completed the forms while he prepared for work. Mr. Hickman testified that the forms had to be returned before he could collect a pay check. Ms. Draper initially began to complete the forms by asking him the questions, but then completed the forms based on her own knowledge. She marked "no" to the question asking whether a doctor had ever restricted his activities and "no" to whether he had ever been assessed any percentage of permanent disability. Ms. Draper

testified that she did not know of the prior back injury and that she did not read the warning on the application. Ms. Draper placed an "X" beside each line Mr. Hickman needed to sign, and he later signed where indicated.

The form is dated July 25, 2001, and Mr. Hickman received an advance on his pay check on July 26, 2001. Mr. Hickman received his first actual payroll check on August 4, 2001. On June 8, 2002, while at work, Mr. Hickman suffered a "glitch" in his back. This was the beginning of his vacation period and during that period he saw a doctor. The doctor informed him that it was not a serious injury; therefore, Mr. Hickman did not request any type of compensation. After the vacation ended, he returned to work. On July 15, 2002, he suffered a work-related injury as his back gave out. On July 18, 2002, he returned to work and was interviewed by Dewayne Sanders. During the course of this statement, Mr. Hickman informed Mr. Sanders of his previous back injury. Also, in a statement to Mickie Clopton of American Interstate Insurance, Jim Smith Logging's compensation carrier, Mr. Hickman informed her of his prior back injury, which occurred in 1993 while he was employed with Wal-Mart. Mr. Hickman's application for compensation was denied by his employer.

**PROCEDURAL HISTORY**

Shortly after suffering the work-related back injury, the claimant filed a 1008 claim form. Jim Smith Logging denied claimants' compensation request based on an affirmative defense arising under La.R.S. 23:1208.1. On October 30, 2003, the Office of Workers' Compensation decided in favor of the claimant, Mr. Hickman. Jim Smith Logging filed a timely, suspensive appeal on December 12, 2003. Mr. Hickman

2

answered the appeal and asked for penalties and attorney fees.

**ASSIGNMENTS OF ERROR**

The defendant, Jim Smith, raises the first and second assignments of error. The third assignment of error is raised by the claimant, Mr. Hickman.

1) Did the Workers' Compensation Judge err in failing to find that the claimant's failure to answer truthfully the medical questionnaire portion of the application for employment and to disclose his previous medical treatment for a herniated lumbar disc directly related to the present medical condition?

2) Did the Workers' Compensation Judge err in failing to order the forfeiture of benefits by the claimant and awarding him supplemental earnings benefits and medical benefits despite his failure to answer the medical questionnaire truthfully?

3) Did the Workers' Compensation Judge err in denying claimant's claim for penalties and attorney fees?

**LAW AND ANALYSIS**

Findings of the trial court are reviewable on appeal, and the appellate standard of review has been clearly established. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

**ASSIGNMENT OF ERROR NUMBER ONE**

The defendant's first assignment of error concerns the untruthful statement and the connection of that statement to the new injury. The relevant statute for determining whether a claimant's statements on an employment application or medical questionnaire may result in forfeiture of those requested benefits is La.R.S. 23:1208.1, which provides:

> Nothing in this title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

**A)      Was the claimant's statement untruthful?**

The Workers' Compensation Judge found that the claimant lacked the intent to deceive, stating:

> The court believes, as was testified to by the owner of the company, Mr. Jim Smith, that there is a somewhat relaxed environment in the logging business. Mr. Smith indicated he hires employees from this generally close knit community on their reputation. In this case, Mr. Smith verbally hired the claimant. The job application was simply a technicality, which nobody really paid much attention to. This decision, today's decision, turns on whether the claimant failed to list a previous – whether claimant's failure to list a previous back injury was intentional untruthfulness. Sloppy it was, but not intentional untruthfulness. Poor paperwork is not intentional untruthfulness. Neither claimant nor the company spent the necessary time it should have on the important element of hiring – on this important element of the hiring process.

The Workers' Compensation Judge considered the factual circumstances surrounding

the hiring of the claimant and determined that based on the facts before the court, the claimant did not have the intent to deceive the defendant.

The defendant contends that the claimant made a false statement and thus should be held accountable for it. The defendant argues that the claimant's lack of intent does not remove the statement from the realm of falsity. "A survey of cases indicates that an employee/applicant has failed to answer truthfully only when he clearly indicates "no" on the employer's questionnaire, denying the existence of a known medical condition." *Boh Bros. Constr. Co. v. Price,* 00-2233 (La.App. 4 Cir. 8/29/01), 800 So.2d 898, at 901, *writ denied,* 01-2623 (La. 12/14/01), 804 So.2d 634. The claimant took the forms home, and Ms. Draper completed the forms while he prepared for work. Ms. Draper placed an "X" beside each line Mr. Hickman needed to sign, and Mr. Hickman later signed in the designated places. The claimant argues that he did not complete the form, but merely signed it. The defendant counters this with the argument made in *Boh Bros.*, "it is well settled that a person who signs a written instrument is presumed to know its contents and cannot claim that he or she did not read or understand the document." *Id.* at 902. The defendant proposes that by signing the questionnaire, Mr. Hickman adopted the contents of it as his own and thus, made a false statement.

We disagree with our brethren of the fourth circuit and choose not to adopt their reasoning on this matter. The Workers' Compensation Judge found that the claimant did not have any intent to deceive, but the answers were in fact untruthful. We agree, and, applying the manifest error rule, determine that there is no question that his answers were untrue, but affirm the Workers' Compensation Judge's ruling

5

that he did not have the intention to deceive. Discussing La. R.S. 23:1208.1, the court in *Nabors Drilling USA v. Davis,* 03-136, p.6 (La. 10/21/03), 857 So.2d 407, 414, stated:

> This proviso strikes a careful balance. It reflects the legislature's recognition of the harshness of the forfeiture penalty and attempts to ameliorate the harshness of the penalty for the individual who is simply in the position of trying to obtain or maintain gainful employment, while at the same time preserving the goal of the second injury fund, which is to enhance employment opportunities for those who have been previously disabled.

It is well-established that "provisions of the worker's compensation scheme should be liberally interpreted in favor of the worker." *Bynum v. Capital City Press, Inc.,* 95-1395, pp. 5-6 (La. 7/2/96), 676 So.2d 582, 586. The jurisprudence suggests that when a statute is penal in nature it must be strictly construed. "Forfeiture is a harsh remedy; therefore, statutory forfeiture . . . must be strictly construed." *Nabors* 857 So.2d at 414. In a footnote in *Nabors*, the court discussed La.R.S. 23:1208, which provides a penalty for making a false statement for the purpose of obtaining or defeating workers' compensation benefits, and 23:1208.1 and stated, "[i]n enacting separate anti-fraud statutes, the legislature deliberately elected to treat the two types of falsehoods differently. That difference must be respected. Had the legislature intended that benefits terminate under La.R.S. 23:1208.1 based on the untruthful response alone, it could have so provided. It did not." *Id.* at 415. This statement from *Nabors* supports our decision that one must possess the requisite intent to mislead the employer in order to trigger the forfeiture penalty imposed by La. R.S. 23:1208.1.

The claimant presents a second basis on which he contends that we should

6

affirm the judgment of the Workers' Compensation Judge, which is the failure of the untruthful statement to prejudice the employer. In *Nabors,* the court stated;

> La.R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. The employer has the burden of proving each of the elements required by the statute. The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute.

*Id.* at 414 (citations omitted).

**B)      Did the untruthful statement prejudice the employer?**

For there to be prejudice to the employer, "[t]he untruthful statement must 'directly relate [] to the medical condition for which a claim for benefits is made', or it must 'affect [] the employer's ability to receive reimbursement from the second injury fund.'" *Id.* at 415.

**1)      What does it mean for a untruthful statement to directly relate to the injury?**

In *Wise v. J.E. Merit Constructors, Inc.,* 97-684 (La. 1/21/98), 707 So.2d 1214, the claimant injured his knee in 1991. In 1994, he became employed with a new company and completed a medical questionnaire. On the form he wrote "no" to knee injury but then scratched it out and left the arthritis question blank. On May 15, 1994, he suffered a knee injury and later underwent two knee surgeries. In August 1995, he filed a compensation claim and the employer argued that, due to his untruthful statement, he had lost all benefits. The Louisiana Supreme Court looked at whether the employer had been prejudiced by the claimant's statement, and in this determination they adopted the inevitability test. The inevitability test requires a "direct relation" between the untrue statement and the new injury. "[A] direct relation

7

is established when the subsequent injury was inevitable or very likely to occur because of the presence of the pre-existing condition." *Id.* at 1220.

To determine whether Mr. Hickman's statement was directly related to the present injury requires an evaluation of the doctor's information. Dr. Clark A. Gunderson treated the claimant for a prior back injury in 1993. The doctor wrote a letter to Mickie Clopton in which he discussed the prior diagnosis. For the 1993 injury, he diagnosed the claimant as having a mild disc herniation at L4-5, and an 8% impairment to the body as a whole. The doctor had not seen the claimant since 1996. In June 2003, the doctor conducted an independent medical evaluation. Based on this evaluation, he indicated that claimant had a straining type of injury superimposed on a degenerative L4-5 disc. The doctor stated, the "mere presence of a dehydrated degenerative disc on any MRI does not make it inevitable that the patient will have low back symptoms in the future, as this is a normal aging phenomenon."

More information concerning the claimant's condition was obtained from Dr. Gunderson's deposition. Throughout the entire questioning session, Dr. Gunderson was not able to say that the new injury was "very likely" to occur or "inevitable." The only time that he was able to come close to that was in a question specifically directed to an opinion held at the last visit by claimant to the doctor in 1996. Based on the new medical evaluation, the doctor was unable to say that the new injury was "very likely" or "inevitable" to occur. He was unable to make this determination, even in light of the fact that he held no knowledge of the logging industry and assumed the field to be one of a "heavy job" where people would have significant back problems whether they had good discs or bad discs. Both Mr. Smith and Mr. Hickman testified

8

that the logging industry, especially the position of saw-hand, was no longer as injurious as it once was. Also, the claimant was pain free for the past three years prior to the new injury, and the defendant was unable to present any medical evidence to suggest that the second injury was inevitable or likely to occur.

Based on our analysis today, we find that the untruthful statement does not directly relate to the present medical condition. On this issue, the defendant has failed to meet his burden.

**ASSIGNMENT OF ERROR NUMBER TWO**

The defendant's second assignment of error concerns whether or not the trial court was correct in awarding benefits to the claimant. As previously discussed in assignment of error one, the employer was unable to prove that the claimant had the intent to deceive or that the untrue statement was directly related to the subsequent injury and that this statement has prejudiced the employer. Due to the employer's inability to prove the required elements of La.R.S. 23:1208.1, we determine that the trial court's award of benefits to the claimant was appropriate.

**ASSIGNMENT OF ERROR NUMBER THREE**

The plaintiff answered the appeal and requested penalties and attorney fees. However, we affirm the Workers' Compensation Judge's failure to grant penalties and attorney fees. Great deference is given to the trier of fact, and thus penalties and attorney fees are denied. "On review, a workers' compensation judge's determination as to whether penalties and attorney's fees are appropriate is subject to the manifest error standard of review." *Jenkins v. Roy O. Martin Lumber, Inc.,* 03-143, pp. 8-9 (La.App. 3 Cir. 3/3/04), 868 So.2d 250, 255, *writ denied,* 04-1140 (La. 6/25/04), 876

9

So.2d 844. In order for the claimant to recover penalties and attorney fees, there must be a showing that the defendant did not raise a seriously disputed issue. "To reasonably controvert a workers' compensation claim so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual and medical information to reasonably counter the evidence provided by the claimant." *Johnson v. Johnson Controls, Inc.,* 38,495, pp. 16-17 (La.App. 2 Cir. 5/12/04), 873 So.2d 923, 933-34. The defendant had a legitimate defense because the plaintiff failed to disclose his prior injury and this area has been the subject matter of much debate. It is unimportant that the defendant did not dispute every single point, as long as it raised a legitimate issue. Provision of worker's compensation statute authorizing award of attorney fees to claimant is penal in nature and, thus, must be strictly construed and employer should not be penalized for taking close factual or legal question to court for resolution. *Lindon v. Terminix Servs., Inc.,* 617 So. 2d 1251, 1253 (La.App. 3 Cir.), *writ denied,* 624 So.2d 1226 (La. 1993).

**CONCLUSION**

We therefore affirm the decision by the Workers' Compensation Judge awarding compensation to Mr. Hickman. Costs of this appeal are assessed to the Jim Smith Logging.

**AFFIRMED.**