STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1192


EDWARD TRENT, JR.

VERSUS

TRIAD ELECTRIC & CONTROLS, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 08-06487
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

PETERS, J., concurs in the result.

PAINTER, J., concurs in the result.

AFFIRMED.


Kevin Louis Camel
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA 70601
Telephone: (337) 436-6611
COUNSEL FOR:
    Plaintiff/Appellee - Edward Trent, Jr.

Edward D. Hughes
Taylor, Porter, Brooks & Phillips, L.L.P.
P. O. Box 2471
Baton Rouge, LA 70821
Telephone: (225) 387-3221
COUNSEL FOR:
    Defendant/Appellant - Triad Electric & Controls, Inc.

**THIBODEAUX, Chief Judge.**

Appellant, Triad Electric & Controls, Inc. (Triad), asserts that the Office of Workers' Compensation (OWC) was manifestly erroneous by finding that (1) Triad's former employee, Edward Trent, Jr., proved he had a job-related accident, and (2) Trent did not forfeit his workers' compensation benefits (a) because of his false statements regarding prior injuries, and (b) because of his false statements for the purpose of obtaining the benefits. Trent answered Triad's appeal requesting attorney fees and court costs. We affirm the OWC judgment.

I.

**ISSUES**

We shall consider whether the Workers' Compensation Judge (WCJ) committed manifest errors:

(1) by concluding that the employee had a job-related accident, where the employee alleged that his supervisor witnessed the accident and where the supervisor denied witnessing the accident but acknowledged hearing some noise at the time of the alleged accident;

(2) by holding that the employee did not forfeit his benefits under La.R.S. 23:1208.1, where (a) the employee with limited reading abilities had a previous back injury from which he allegedly recovered; (b) the employee failed to disclose the previous injury on the medical questionnaire; and, (c) the employee's current injury is in the same area as the previous one;

(3) by holding that the employee did not forfeit his benefits under La.R.S. 23:1208 where the employee, when asked about his income, failed to disclose that he earned approximately $100.00 per week selling shrimp; and,

(4) by denying penalties and attorney fees for Triad's discontinuance of indemnity benefits.

## II.

## **FACTS**

In 2006, Trent had a work-related accident while working for a previous employer. As a result of that accident, Trent suffered a disc herniation at L5-S1 and a small central disc protrusion at L4-5. His treating physician, Dr. Clark Gunderson, recommended certain treatment that Trent did not undergo until after the current accident. Trent and his previous employer settled Trent's claim for workers' compensation benefits.

After a period of time, Trent returned to work performing manual labor for various employers. He testified that after the 2006 accident, his back pain resolved itself and he did not experience any back problems during his various employments.

Triad hired Trent as an electrician's helper in March of 2008. In connection with this employment, Trent filled out a Medical History Form in which he denied having any previous injuries. The form also contained a notice that a failure to truthfully answer questions on the form may result in forfeiture of workers' compensation benefits.

At the OWC hearing, Trent testified that he dropped out of the seventh grade and that he could not read very well. Thus, he alleged, he copied the answers off the forms filled out by some other applicants. At his deposition, Trent testified he denied having previous injuries on the form because he wanted a job. At the hearing, Trent testified that he was embarrassed to acknowledge his limited reading abilities, and that is why he testified the way he did at the deposition.

Trent stated that on Friday, June 19, 2008, he injured his back when he slipped and fell on the metal steps of the Triad work trailer used as an office. Trent

testified that he went to the office to pick up his paycheck and that it rained heavily that day. Trent observed Chris Burnett, a supervisor, standing in the doorway of the office talking to the secretary. Trent alleged that when he stepped on the stairway, he slipped and fell. The secretary and Burnette asked him if he was all right, and Trent responded he thought he was all right and he had come to get his paycheck.

Trent further testified that over the weekend his back started to hurt and that he reported the incident to his employer the following week. The doctor to whom Triad sent Trent after the accident released Trent to light-duty work. Trent claims that because he could not perform the light-duty work to which he was assigned, he consulted Dr. Gunderson who placed him on a "no-duty" status on July 11, 2008.

Dr. Gunderson requested an MRI. It revealed disc protrusions at the same sites as the 2006 injuries but on a larger scale. Trent underwent physical therapy and epidural steroid injections. As the steroid injections did not relieve Trent's conditions, Dr. Gunderson recommended surgery.

At his deposition, Dr. Gunderson testified that it was possible that Trent would have suffered the 2008 injury in the absence of the 2006 injury. Dr. Gunderson believed that the 2008 injury aggravated the 2006 injury. Yet, he also testified that he would not have considered Trent disabled immediately prior to the accident if he knew that Trent performed heavy duty manual labor for a year and a half between the accidents. In his report, Dr. Gunderson wrote that "[b]ecause of the two year history of being able to work," he believed that Trent's "complaints are related to the injury of June 19, 2008." In another report, Dr. Gunderson wrote that Trent "apparently has had a complete recovery" from the 2006 injury.

The insurance adjuster testified that Trent was receiving workers' compensation benefits for this accident from July until October of 2008 in the amount of $515.67 per week. The adjuster acknowledged that the correct amount of the benefit should have been, as the parties stipulated, $522.00. She offered no explanation for the underpayment.

The adjuster terminated the benefits when she learned that Trent injured the same region of his spine in 2006 as in 2008, that Dr. Gunderson recommended the same treatment in 2006 as he recommended in 2008, that Trent never underwent the treatment before the 2008 injury, and that he denied having the injury on the medical questionnaire.

The OWC held that Trent proved he had a work-related accident. Because of Trent's limited reading abilities, his embarrassment of this fact, and Triad's inability to establish that the 2008 injury was inevitable and merged with the 2006 injury, the OWC found that Trent did not forfeit his benefits under La.R.S. 23:1208.1.

Triad claims that the OWC erred by concluding that Trent sustained his burden of proving the accident occurrence and by concluding that Triad did not sustain its burden of proving its defense under La.R.S. 23:1208 and 23:1208.1. In his reply brief, Trent asserted that the trial court erred by not awarding him penalties and attorney fees for the underpayment of his benefits. Trent answered the appeal requesting this court to affirm the OWC's judgment and to award him attorney fees for the work on appeal and court costs for the trial and appellate proceedings.

4

III.

## STANDARD OF REVIEW

The WCJ's findings of fact are reviewed under the "manifest error" or "clearly wrong" standard. *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239. Appellate courts do not disturb the WCJ's findings of fact as long as they are reasonable and supported by the record. *Id.*

The WCJ's determination as to whether or not a claimant willfully made a false statement to obtain workers' compensation benefits and causation issues are findings of fact. *Id.*; *Hunter v. Alliance Compressors*, 06-100 (La.App. 3 Cir. 6/21/06), 934 So.2d 225. The WCJ's imposition of penalties and attorney fees upon an employer is also a finding of fact subject to the manifest error standard. *Guilbeau*, 934 So.2d 239.

This court reviews WCJ's credibility determinations for manifest error. *See Butterfield v. Turner Indus.*, 06-1098 (La.App. 3 Cir. 2/7/07), 951 So.2d 476, *writ denied*, 07-507 (La. 4/27/07), 955 So.2d 692. We find manifest error in credibility determinations only when the "objective evidence so contradicts an employee's testimony, or testimony is so internally inconsistent or implausible on its face that a reasonable factfinder would discredit the story." *Id.* at 480 (quoting *Hubbard v. Allied Bldg. Stores, Inc.*, 41,534, p. 5 (La.App. 2 Cir. 11/1/06), 942 So.2d 639, 643).

IV.

## LAW AND DISCUSSION

### (1) Occurrence of a Work-Related Accident

An employee may prove by the employee's testimony alone that an unwitnessed accident in the course and scope of her or his employment occurred if: "(1) no other evidence discredits or casts serious doubt upon the worker's version of

the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Butterfield*, 951 So.2d at 479 (quoting *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La.1992)). The worker's friends, co-workers, spouse, as well as the worker's medical records, may corroborate the worker's testimony. *Lollis v. Shaw Global Energy Servs.*, 07-395 (La.App. 3 Cir. 10/3/07), 966 So.2d 1118.

The determination as to whether an accident occurred involves a judgment of credibility to which an appellate court gives great deference on review. *Francis v. BFI*, 01-769 (La.App. 3 Cir. 12/12/01), 801 So.2d 604, *writ denied*, 02-101 (La. 3/22/02), 811 So.2d 934. Generally, the surrounding circumstances of the case indicate what effect a court should give to the length of time a worker takes to report an accident. *See Ardoin v. Firestone Polymers, L.L.C.*, 09-530 (La.App. 3 Cir. 12/30/09), __So.3d __; *Trahan v. Turner Indus., Inc.*, 08-704 (La.App. 3 Cir. 12/10/08), 999 So.2d 268. Thus, that a worker did not immediately report an accident does not necessarily cast a serious doubt on the worker's testimony. *See Id.*

Here, Triad argues that the testimony of Burnette discredits or casts a serious doubt on Trent's testimony because Trent claims that Burnette witnessed the accident and Burnette testified that he never did. Furthermore, Triad asserts that Trent's failure to immediately report the accident casts a serious doubt on the accident's occurrence. Finally, Triad claims that Trent's testimony was not credible because he lied about making money after being injured, about his ability to lift heavy objects, and about his previous back injury.

We find that the trial court did not manifestly err by concluding that Trent satisfied his burden of proof. Contrary to Triad's assertions, Burnette's testimony supports Trent's account of the accident. Although Burnette testified that

he did not witness the fall, he testified that he heard the noise on the stairs at the time Trent claims to have had the accident. The nature of that noise even prompted Burnette's inquiry as to whether Trent was all right.

Moreover, based on the circumstances of this case, it was not unreasonable for the WCJ to rely on Trent's explanation that he thought Brunette actually witnessed the accident, and, therefore, he did not think that the immediate report was necessary. Additionally, the accident happened on a Friday just before Trent was going home, and he thought that he was not hurt. Trent reported the accident when he returned to work the next week. His wife's testimony and his medical records also corroborate his account of the accident.

Finally, Trent's alleged lying regarding his income, ability to lift heavy objects, and his previous back injury was not enough to cast a *serious* doubt on his claims. The WCJ listened to all of this evidence and Trent's explanations of it. Trent testified that he thought he was being asked about employment and not about side jobs, like selling shrimp, when he was asked about his income. He also explained that he had good and bad days when it came to bending and lifting. Finally, he stated that he denied having prior back injury on the form because he just copied the answers of the other applicants. He explained that he copied the answers because he did not read well.

We do not find that Trent's testimony was implausible on its face or that objective evidence so contradicted his testimony that a reasonable factfinder would have discredited the story. Therefore, we find no error in the OWC's ruling that the accident occurred.

7

## (2) Forfeiture Defense Under La.R.S. 23:1208.1

An employer may inquire about an employee's "previous injuries, disabilities, or other medical conditions." La.R.S. 23:1208.1. If the employee fails to answer truthfully, the employee forfeits workers' compensation benefits, "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund." *Id.* Thus, La.R.S. 23:1208.1 creates an affirmative defense of forfeiture for the employer from whom an employee seeks workers' compensation benefits. *Wise v. J.E. Merit Constructors, Inc.*, 97-684 (La. 1/21/98), 707 So.2d 1214. Because forfeiture is a very harsh remedy, the statute must be strictly construed. *Nabors Drilling USA v. Davis,* 03-136 (La. 10/21/03), 857 So.2d 407.

The statute's enforceability is subject to certain notice requirements. La.R.S. 23:1208.1. That Triad complied with the notice requirements of the statute has not been disputed. Yet, we note that Trent may not have had the actual notice because of his limited reading skills.

We shall focus on whether the OWC erred by finding that Triad did not carry its burden of proof with respect to the other two elements of its forfeiture defense: the untruthful statement and the prejudice to its ability to receive reimbursement.

### (a) The Untruthful Statement

To satisfy the requirements of the forfeiture defense under La.R.S. 23:1208.1, it is not enough for the employer to demonstrate that the employee made a false statement about her or his medical condition. The employer must show that the employee had an intent to deceive the employer. *Hickman v. Jim Smith Logging*,

04-157 (La.App. 3 Cir. 9/29/04), 883 So.2d 1072, *writ denied*, 04-2682 (La. 1/14/05), 889 So.2d 269.

For example, where an employee's girlfriend, who did not know about the employee's prior work injury, filled out the medical questionnaire answering questions about prior injuries in the negative, and the employee only signed the form, this court found that the employer did not sustain its burden of proving this element of its forfeiture defense. *Id.*

Here, the OWC found that Trent did not intentionally deny having a prior injury. Trent testified that because of his limited education, his reading skills were not well developed. For this reason, he copied answers on the form from the forms filled out by other applicants without reading or understanding the questions. Triad attempted to impeach this explanation with Trent's deposition testimony in which he stated that he denied having a prior injury because he wanted the job. Trent further explained that he was embarrassed to admit he had limited reading skills and that is why he answered the way he did during the deposition.

The WCJ found Trent's explanations reasonable and persuasive. This court does not find that the OWC erred in this credibility determination. Based on these considerations, we conclude that Triad failed to prove this element of its La.R.S. 23:1208.1 forfeiture defense.

### (b) The Prejudice to the Employer

An employer may establish prejudice (1) by proving that the employee's untruthful statement relates directly to the medical condition for which the employee claims benefits, or (2) by proving that the untruthful statement affected the employer's entitlement to reimbursement from the second injury fund. *Hickman*, 883 So.2d 1072 (citing *Davis*, 857 So.2d 407). Under the first prong, it is not enough for

the employer to show that the previous injury and the current injury were to the exact same area. *Wise*, 707 So.2d 1214. Instead, a direct relation between the untruthful statement and the injury exists "when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition." *Id.* at 1220.

For example, where an employee had a pre-existing traumatic arthritis in his knee, which was completely asymptomatic for two or three years during which the employee worked as a laborer, and the employee slipped and, as a result, experienced a meniscus tear in the same knee, the supreme court concluded that the employer failed to satisfy the inevitability test. *Id.*

Here, Triad faces the same problem. Although Trent's current back injury is in the same area as his previous injury, that is not enough to satisfy the inevitability test. Like the employee with a pre-existing knee arthritis who was asymptomatic for years while working as a laborer, Trent's back symptoms resolved themselves, and he was able to perform heavy labor for one and a half to two years between his injuries without any back complaints and without seeking any medical treatment. Moreover, in both cases the employees' second injuries resulted not from performing their ordinary job duties but from accidental slips. Finally, the treating physician's testimony that Trent's current injury could have been an aggravation of his old condition or that it could have occurred in the absence of the old one does not establish inevitability or exceptional likelihood of the second injury.

Under the alternative prong, the employer must show prejudice to its ability to collect from the second injury fund. To establish entitlement to reimbursement from the fund, the employer must prove three elements: (1) that the employee suffered from a permanent partial disability that was so serious as to hinder employment; (2) that the employer actually knew of this disability prior to the current

injury; and, (3) that the disability merged with the current injury to produce a greater disability. *Wise*, 707 So.2d 1214. To aid the employer's collection of reimbursement from the second injury fund, our legislature established "a presumption that the employer considered the condition to be permanent and to be or likely to be a hindrance or obstacle to employment" where the condition was one of the thirty listed in the statute. La.R.S. 23:1378(F). One of these conditions is a ruptured intervertebral disc. *Id.*

"A 'presumption' is an inference created by legislation that the trier of fact must draw if it finds the existence of the predicate fact *unless the trier of fact is persuaded by evidence of the nonexistence of the fact to be inferred.*" La.Code Evid. art. 302(3) (emphasis added). In civil cases, unless a "more specific legislation provides otherwise," presumptions, as used in legislation, are rebuttable "and therefore may be controverted or overcome by appropriate evidence." La.Code Evid. arts. 301, 304.

Here, Triad failed to establish both, that Trent suffered from permanent partial disability that hindered his employment and that his alleged disability merged with the current injury to produce a greater disability. Dr. Gunderson testified that in 2006, Trent's MRI showed that "there was probably what would be considered a small herniation at L5-S1." Thus, Triad established a predicate fact, the diagnosis of a disc herniation. Yet, Trent supplied enough evidence to convince the OWC of the nonexistence of the fact to be inferred, i.e., that Trent suffered from a permanent partial disability at the time Triad hired him: (1) Trent and his wife testified that he had no back problems after the 2006 injury resolved itself; (2) without any back complaints, Trent worked at several jobs that involved heavy manual labor prior to working for Triad; (3) there are no medical records showing that Trent sought or

11

received medical care for any back problems between the injuries; (4) Trent was able to perform his work duties at Triad and was injured not while in the performance of his duties but because of a slip and fall; (5) Dr. Gunderson testified that if Trent was able to work as a laborer for two years prior to the accident, Dr. Gunderson would not have concluded that Trent suffered from a partial disability immediately before the accident; and, (6) Dr. Gunderson wrote that Trent "has previously known disc pathology," but that it was Dr. Gunderson's impression that Trent "apparently has had a complete recovery" from the 2006 injury. Based on this, we find that the OWC did not err by concluding that Triad failed to establish that Trent suffered from permanent partial disability immediately before the 2008 accident.

Triad also failed to establish merger of the 2006 and the 2008 injuries so as to produce a greater disability. As mentioned previously in this opinion, Dr. Gunderson testified that Trent's current injury could have been an aggravation of his old condition or that it could have occurred in the absence of the old. Based on this testimony, this court cannot conclude that the OWC manifestly erred by finding that Triad did not sustain its burden of proving that Trent's previous injury merged with the current injury to produce a greater injury.

## (3) Forfeiture Defense Under La.R.S. 23:1208

It is unlawful "for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." La.R.S. 23:1208(A). "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." La.R.S. 23:1208(E). Thus, the employee forfeits workers' compensation benefits if the employer proves that (1) that the employee made a false statement or

12

representation, (2) willfully, (3) for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7.

Here, Triad argues that Trent intentionally concealed his income from shrimp sales with an intent to obtain additional workers' compensation benefits. With support of a surveillance video, Triad also claims that Trent intentionally exaggerated the extent of his injuries.

At the hearing, Trent explained that he did not mention the income from his shrimp selling because he thought that when the counsel inquired about his income, he meant income from an actual employment and not a side job. Thus, Trent's failure to disclose this income appears to have been a misunderstanding and not a willfully false statement.

Trent also explained that on some days his back hurts less than on other days and that is why his level of activities varies from day to day. We note that for this reason, video surveillance that is subject to recording at times most favorable to the person making the recording is inherently of limited value. Based on these considerations, we find no manifest errors here.

**(4) Penalties and Attorney Fees**

The workers' compensation judge concluded that "[g]iven the factual disputes at issue and the defense presented," attorney fees and penalties were not owed. We agree. The record evidence demonstrates that this factual determination is not manifestly erroneous.

## V.

## <u>CONCLUSION</u>

The judgment in favor of Edward Trent, Jr. is affirmed.

**AFFIRMED**.